**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| MICHAEL CHAPMAN <br> 3813 Kimble Rd. <br> Baltimore, MD 21218 | * <br> <br> * | |
| and | * | Civil Action No. |
| WHITNEY GREENE <br> 5114 Pembridge Ave. <br> Baltimore, MD 21215 | * <br> <br> * | |
| Plaintiffs, on behalf of themselves <br> and others similarly situated, | * <br> * | |
| v. | * | |
| UHH WEE, WE CARE INC. <br> d/b/a <br> UHH WEE WE CARE ASSISTED LIVING <br> 4726 Elison Ave. <br> Baltimore, MD 21206 | * <br> * <br> * | |
| | * | |
| **Serve On:** <br> Edwina Murray <br> 4726 Elison Ave. <br> Baltimore, MD 21206 | * <br> <br> * | |
| and | * | |
| UHH WEE, WE CARE <br> TRANSPORTATION INC. <br> d/b/a <br> UHH WEE WE CARE ASSISTED LIVING <br> 4726 Elison Ave. <br> Baltimore, MD 21206 | * <br> <br> * <br> <br> * <br> * | |
| **Serve On:** <br> Edwina Murray <br> 4726 Elison Ave. <br> Baltimore, MD 21206 | * | |
| and | * | |

| | |
|---|---|
| EDWINA MURRAY | * |
| 4726 Elison Ave. | |
| Baltimore, MD 21206 | * |
| | |
| Defendants. | * |

...................................................................

# **COMPLAINT**

Plaintiffs, by and through undersigned counsel, allege as follows:

## **Introduction**

1. Mr. Michael Chapman and Ms. Whitney Greene (collectively, "Plaintiffs") are former employees of Edwina Murray and her companies, Uhh Wee, We Care Inc., and Uhh Wee, We Care Transportation Inc. (collectively, "Defendants"). These companies provide care and transportation for individuals with disabilities. Mr. Chapman worked as a care provider and driver for individuals with disabilities, and Ms. Greene worked as a dispatcher for the companies' drivers.

2. Defendants required their employees to work long hours for wages that fell far below the legal minimum, and further ignored and refused to pay overtime premiums to employees when they worked more than 40 hours in a week. Not surprisingly, given the poor working conditions, employee turnover was high.

3. Plaintiffs bring this civil action for relief stemming from Defendants' willful refusal to pay Plaintiffs their wages, including minimum and overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*; and Maryland common law. Plaintiffs seek their unpaid wages, damages, and attorneys' fees and costs

pursuant to the FLSA, the MWHL, and the MWPCL, as well as Maryland common law. Mr. Chapman seeks relief under Maryland common law arising from Defendants' knowing misrepresentations. Ms. Greene seeks relief under Maryland common law for her wrongful discharge in violation of public policy.

4. Plaintiffs also bring this action as a collective action under the FLSA, 29 U.S.C. §§ 206, 207, and 216(b) on behalf of themselves and other similarly situated current and former employees of Defendants who were subject to Defendants' schemes to violate the FLSA. Plaintiffs seek unpaid wages, damages, and attorneys' fees and costs on behalf of the class they seek to represent with respect to their FLSA claims.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

7. This Court has personal jurisdiction over Defendants because Defendants conduct business in the District of Maryland.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Parties

9. Plaintiff Michael Chapman is a Maryland resident. He provided care and transportation services as Defendants' employee during various periods from about 2008 through about October 2016.

3

10. Plaintiff Whitney Greene is a Maryland resident. She was employed by Defendants as a dispatcher for several weeks in the fall of 2016.

11. As required by the FLSA, 29 U.S.C. § 216(b), Plaintiffs Chapman and Greene have given their written consent to become a party to this action. True and correct copies of Plaintiffs' FLSA consent forms are attached hereto as Exhibit A.

12. Other similarly situated individuals were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g), during the time period relevant to this Complaint.

13. Defendant Uhh Wee, We Care Inc. ("Uhh Wee") is a Maryland corporation with its principal place of business in Baltimore City, Maryland. Uhh Wee operates group homes for individuals with disabilities in and around Baltimore City. At all times relevant to this action, Uhh Wee was an enterprise "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Uhh Wee was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

14. Defendant Uhh Wee, We Care Transportation Inc. ("Uhh Wee Transportation") is a Maryland corporation with its principal place of business in Baltimore City, Maryland. Uhh Wee Transportation provides transportation services for individuals with disabilities in and around Baltimore City. At all times relevant to this action, Uhh Wee Transportation was an enterprise "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Uhh Wee Transportation was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

15. Defendant Edwina Murray formed Uhh Wee in 2006 and Uhh Wee Transportation in 2008. Defendant Murray is the sole owner, agent, and/or principal of Uhh Wee and Uhh Wee Transportation. Defendant Murray has control over her companies' daily operations. She hired and fired those entities' employees, set employee wages, determined employee schedules, and supervised employee work performance. Defendant Murray was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

16. Defendant Murray operates Uhh Wee and Uhh Wee Transportation as a single enterprise, such that the two entities perform related activities under unified operations or common control for a common business purpose of providing housing, care, and transportation to their clients, who are individuals with disabilities. Uhh Wee Transportation's office is located at one of Uhh Wee's group homes. Much of Uhh Wee Transportation's business constitutes transporting the individuals who reside at Uhh Wee's group homes, and care providers such as Mr. Chapman sometimes serve as drivers for Uhh Wee Transportation.

## **Factual Allegations**

17. Plaintiffs repeat and incorporate by reference all of the allegations set forth above.

### *Michael Chapman*

18. In or around 2008, Defendants Murray and Uhh Wee, as employers and/or joint employers, hired Mr. Chapman to work as a care provider at Uhh Wee's group homes.

19. Throughout his employment, Defendant Murray called Mr. Chapman each Thursday to inform him of his weekly shift schedule, telling him to which of Uhh Wee's group homes he was assigned.

20. Mr. Chapman regularly worked a 72-hour weekend shift from 6 a.m. Friday morning to 6 a.m. Monday morning. Defendant Murray told Mr. Chapman he was a "weekend worker," not a "permanent worker," and that weekend-shift pay for such workers was $225. Defendants paid Mr. Chapman $225 for each 72-hour weekend shift—the equivalent of a pay rate of $3.13 per hour.

21. Mr. Chapman also frequently worked weeknight shifts from 6 p.m. to 6 a.m. Defendant Murray told Mr. Chapman that the pay for each 12-hour weeknight shift was $60. Defendants paid Mr. Chapman $60 for each 12-hour weeknight shift—the equivalent of a pay rate of $5 per hour.

22. Each of Uhh Wee's group homes housed approximately four to nine individuals. Residents had a variety of physical health issues that required many to use a wheel chair, as well as mental-health issues including schizophrenia and Alzheimer's. Most residents had both physical and mental health issues.

23. Mr. Chapman was the sole care provider present during his shifts. His responsibilities included assisting residents with toileting, bathing, dressing, cooking, and cleaning, as well as performing care-related paperwork.

24. Defendants maintained a "daily duties" sheet in each group home that listed tasks each care provider was required to perform; upon performing a task, the worker was required to initial next to the task description. Defendants also required that workers write "shift reports" that included the behavioral status of the residents, "incident reports," and any materials that needed to be purchased. Mr. Chapman followed Defendants' instructions as to the "daily duties" sheet and "shift reports."

25. All work-related equipment and supplies Mr. Chapman used belonged to Defendants. These included heavy equipment like hoyer lifts, lighter equipment like respirator masks, and miscellaneous supplies like gloves.

26. Residents had toileting schedules that required Mr. Chapman to check during the night whether they needed to use the toilet or required assistance in cleaning themselves in the event they had soiled themselves. As a result of this and other work, Mr. Chapman was able to sleep only for brief periods while seated in a chair at the dining room table. There was no sleeping area designated for his use.

27. Mr. Chapman also worked as a driver on occasion, transporting residents to and from adult day care centers.

28. Mr. Chapman regularly worked more than 40 hours per week, but received neither minimum wage nor an overtime rate of one and one-half (1.5) times an hourly rate above the legal minimum for hours worked beyond 40 in a given week, despite being entitled to both minimum wage and overtime under state and federal law.

29. Mr. Chapman regularly asked Defendant Murray why he was not paid more. Defendant Murray's explanation was that he was a "weekend worker." She told him that he was not made a "permanent worker" because he did not have a Certified Nursing Assistant certificate.

30. Defendant Murray signed Mr. Chapman's paychecks and maintained records of his time worked.

31. Defendants sometimes paid Mr. Chapman less than the already low pay he was promised, which led to pay disputes. When such disputes arose, Defendant Murray sometimes placed a letter with Mr. Chapman's paycheck suggesting that Mr. Chapman would have to

7

submit to a criminal history background check to continue his employment with Defendants. Mr. Chapman had already informed Defendant Murray that he had a criminal record when he was first hired, and she had later told him that she had verified his criminal history. Therefore, Mr. Chapman understood the reference to a criminal history check to be a threat that Defendants would terminate his employment if he did not agree to stop questioning his pay. After receiving such letters, Mr. Chapman was chilled from asking further about his pay.

32. During the final months of his employment with Defendants, Defendants increased the number of individuals residing in their group homes such that it was far more difficult for Mr. Chapman to adequately attend to the needs of all residents.

33. Mr. Chapman's employment with Defendants ended following a pay dispute resulting from Defendants' failure to pay him on the scheduled pay day.

*Whitney Greene*

34. In or around September 2016, Ms. Greene spoke with Defendant Murray about an employment opportunity as a dispatcher.

35. Shortly thereafter, Defendants Murray, Uhh Wee, and Uhh Wee Transportation, as employers and/or joint employers, hired Ms. Greene to work as a dispatcher for Uhh Wee Transportation's drivers.

36. Defendant Murray told Ms. Greene that her pay rate was $10.10 per hour, set her work schedule, and maintained records of her time worked.

37. Ms. Greene worked for Defendants for several weeks. In at least one of those weeks, she worked more than 40 hours.

38. Defendant Murray told Ms. Greene that to continue working as a dispatcher, she needed to obtain a "DOT Card," the Medical Examiner Certificate that federal law requires

8

individuals obtain prior to receiving a commercial driver's license. However, neither state nor federal law required such a certificate for Ms. Green's position as a dispatcher.

39. Ms. Greene attempted to obtain this Medical Examiner Certificate, but her examining doctor did not certify her because of medication she took for a mental-health disability, severe depression.

40. Defendant Murray terminated Ms. Greene's employment in or around November 2016 because Ms. Greene did not obtain this unnecessary certification.

41. Other than one $200 payment that Defendants characterized as a "promissory note," Defendants paid Ms. Greene nothing at all for her work.

42. Defendants did not pay Ms. Greene the required minimum hourly wage for her work, nor did Defendants pay Ms. Greene the required overtime rate of one and one-half (1.5) times her regular hourly rate for hours worked beyond 40 in a given week, despite the fact that she was entitled to both minimum wage and overtime under state and federal law.

### Collective Action Allegations Under the FLSA

43. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, minimum wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

44. Plaintiffs and similarly situated employees were victims of a common scheme by Defendants to violate the FLSA.

45. Defendants' scheme included violating the overtime requirements of the FLSA by failing to pay employees one and one-half (1.5) times their regular hourly rate, or an hourly rate above the legal minimum, when they worked more than forty (40) hours per week.

46. Defendants' scheme also included failing to pay the minimum wage as required by the FLSA.

47. Plaintiffs seek collective action status on behalf of all individuals employed by Defendants as care providers or dispatchers at any time during the period beginning three years prior to the date of commencement of this action through the date of judgment in this action, who were paid below the federal minimum wage and/or who did not receive overtime compensation due for hours worked in excess of forty (40) per week ("FLSA Class").

48. Members of the FLSA Class were all similarly subject to Defendants' common practices, policies, or plans requiring or permitting them to perform work for Defendants' benefit without compensation at the FLSA-mandated minimum or overtime wages.

49. Defendant Murray hired and fired members of the FLSA Class, set their compensation and determined the methods of payment, supervised and controlled their work schedules and other conditions of employment, monitored their performance, and maintained employment records.

50. These similarly situated employees are known only to Defendants, are readily identifiable, and may be located through Defendants' records. They may readily be notified of this action, and allowed to opt in to it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, minimum wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

51. Pursuant to the FLSA, 29 C.F.R. § 516, and Md. Code Ann., Lab. & Empl. § 3-424, Defendants had an obligation to maintain employment records for Plaintiffs and all those similarly situated. The exact number of hours worked by Plaintiffs and others similarly situated will be known only through discovery of these records.

52. At all times relevant to this action, Defendants unlawfully failed or refused to comply with the posting requirements of MWHL, Md. Code Ann., Lab. & Empl. § 3-423, and the FLSA, 29 C.F.R. § 516.4.

## COUNT I
## FAIR LABOR STANDARDS ACT
**(Individual and Collective Actions for Denial of Minimum and Overtime Wages)**

53. Plaintiffs repeat and incorporate by reference the allegations set forth above.

54. Defendants failed to pay Plaintiffs and the FLSA Class minimum and overtime wages in violation of 29 U.S.C. §§ 206 and 207.

55. Defendants' violations were willful, as such term is used in 29 U.S.C. § 255(a). Defendants knew their violations were unlawful, or showed reckless disregard for whether their conduct was prohibited.

56. Defendants' violations were not the result of a good-faith, reasonable error.

57. Defendants' violations caused Plaintiffs and the FLSA Class to suffer loss of wages and interest thereon.

58. Defendants are liable to Plaintiffs and the FLSA Class under 29 U.S.C. § 216(b) for their unpaid wages including any minimum and overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT II
## MARYLAND WAGE AND HOUR LAW
**(Individual Actions)**

59. Plaintiffs repeat and incorporate by reference the allegations set forth above.

60. Defendants failed or refused to pay Plaintiffs' minimum and overtime wages in violation of Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a) and 3-420.

61. Defendants did not act in good faith and with a reasonable belief that the wages paid to Plaintiffs were not less than the wages required under the MWHL.

62. Defendants are liable to Plaintiffs pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid minimum and overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT III
## MARYLAND WAGE PAYMENT AND COLLECTION LAW
**(Individual Actions)**

63. Plaintiffs repeat and incorporate by reference the allegations set forth above.

64. Defendants failed or refused to pay Plaintiffs all wages due, including minimum and overtime wages, on their regular paydays in violation of Md. Code Ann., Lab. & Empl. § 3-502.

65. Defendants failed or refused to timely pay Plaintiffs all wages due for work that they performed, in violation of Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a).

66. Defendants failed and/or refused to pay Plaintiffs all wages due for work performed prior to the termination of Plaintiffs' employment, or on or before the day the Plaintiffs would have been paid had they not been terminated, as required by Md. Code Ann., Lab. & Empl. § 3-505(a).

67. Defendants' unlawful failure or refusal to timely pay Plaintiffs all their earned wages was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of Plaintiffs' claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute.

68. Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, Plaintiffs seek unpaid wages, an additional award of double damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

**COUNT IV**
**QUANTUM MERUIT**
**(Individual Actions)**

69. Plaintiffs repeat and incorporate by reference the allegations set forth above.

70. At all times relevant to this complaint, Plaintiffs were Defendants' employees.

71. Defendants had an equitable obligation to compensate Plaintiffs with the fair value of the services which they performed, the best indicator of which is the legally-required wages, for the regular and overtime hours which Plaintiffs worked.

72. Plaintiffs conferred benefits upon Defendants by working regular and overtime hours on their behalf.

73. Defendants had an appreciation or knowledge of the benefits being conferred upon them by Plaintiffs.

74. Despite the foregoing, Defendants retained the regular and overtime wages due and owing to Plaintiffs in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

75. Defendants are liable to Plaintiffs in quantum meruit, together with an award of interest and costs.

**COUNT V**
**FRAUD**
**(Individual Action by Mr. Chapman)**

76. Mr. Chapman repeats and incorporates by reference the allegations set forth above.

77. Defendant Murray falsely and repeatedly told Mr. Chapman that he was not entitled to greater pay because he was a "weekend worker." Defendant Murray made these statements in her individual capacity and on behalf of Uhh Wee.

78. Defendant Murray knew these assertions to be false, and demonstrated actual malice in making them.

79. Defendant Murray made these assertions for the purpose of defrauding Mr. Chapman of the minimum and overtime wages to which he was legally entitled.

80. Mr. Chapman reasonably relied on Defendant Murray's misrepresentations, and had the right to rely on them.

81. Mr. Chapman suffered compensable injury as a result, including the loss of minimum and overtime wages to which he was legally entitled, and damages arising from delayed payment of those wages.

82. Defendants are jointly and severally liable to Mr. Chapman for compensatory and punitive damages, together with an award of interest and costs.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
### (Individual Action by Mr. Chapman)

83. Mr. Chapman repeats and incorporates by reference the allegations set forth above.

84. Defendants owed Mr. Chapman a duty of care. This duty required the transmittal of accurate information from Defendants to Mr. Chapman. Defendant Murray's repeated statements that Mr. Chapman was a "weekend worker" not entitled to basic labor protections were false, and breached Defendants' duty of care.

85. Defendants were negligent in the assertion of these false statements by Defendant Murray. Basic investigation by Defendant Murray would have enabled her to understand that no

such worker category as "weekend worker" exists that could lawfully strip Mr. Chapman of his rights as an employee.

86. Defendants intended that Mr. Chapman would rely on Defendant Murray's statements in deciding to continue working for Defendants despite the very low pay.

87. Defendants knew that Mr. Chapman's reliance on Defendant Murray's false statements would cause loss or injury.

88. Mr. Chapman justifiably relied on Defendants' false statements.

89. Mr. Chapman suffered economic damages proximately caused by Defendants' negligence.

90. Defendants are jointly and severally liable to Mr. Chapman for compensatory damages, together with an award of interest and costs.

### Count VII
### WRONGFUL DISCHARGE
### (Individual Action by Ms. Greene)

91. Ms. Greene repeats and incorporates by reference the allegations set forth above.

92. Defendants employed Ms. Greene on an at-will basis, without a written employment contract or a specific term of employment.

93. Ms. Greene has a major depressive disorder that substantially limits one or more major life activities, and therefore constitutes a disability under state and federal anti-discrimination law.

94. Ms. Greene at all times fully and competently performed all the duties assigned to her. Her mental-health disability was unrelated to the reasonable performance of her job, and did not interfere with the reasonable performance of her job.

95. Defendant Murray, on behalf of herself, Uhh Wee, and Uhh Wee Transportation, terminated Ms. Greene because Ms. Greene was denied a Medical Examiner Certificate based on medication she took for her mental-health disability, despite the fact that such certification was neither legally required for her position nor a bona fide occupational qualification.

96. The avowed public policy of the State of Maryland is to assure all persons equal opportunity in receiving employment, regardless of disability unrelated in nature and extent so as to reasonably preclude the performance of the employment, and to prohibit discrimination in employment. Md. Code Ann., State Gov't § 20-602.

97. Ms. Greene may not assert a claim directly under state or federal anti-discrimination statutes because Defendants did not have the requisite minimum number of employees under those statutes.

98. Ms. Greene's termination constitutes disability discrimination, and was contrary to Maryland public policy.

99. Defendant Murray's conduct in terminating Ms. Greene was deliberate, malicious, willful, and intentionally calculated to inflict harm upon her.

100. As a result of Defendants' wrongful termination of Ms. Greene, she has been left without employment, has been deprived of her hourly wages, has suffered damage to her reputation, and has been otherwise damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a) Certify this matter as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b);

b) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and each member of the FLSA Class, in the amount of each Plaintiff's and FLSA Class member's respective unpaid minimum and overtime wages, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

c) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's unpaid minimum and overtime wages, plus liquidated damages, pursuant to the MWHL, Md. Code Ann., Lab. & Empl. §§ 3-427(a) and (d);

d) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's unpaid wages, including overtime wages, plus double damages pursuant to the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507.2;

e) Grant judgment against Defendants, jointly and severally, in quantum meruit, and award restitution and/or disgorgement of profits to each Plaintiff;

f) Grant judgment against Defendants, jointly and severally, on Mr. Chapman's fraud claim and award compensatory and punitive damages;

g) Grant judgment against Defendants, jointly and severally, on Mr. Chapman's negligent-misrepresentation claim and award compensatory damages;

h) Grant judgment against Defendants, jointly and severally, on Ms. Greene's wrongful-discharge claim and award compensatory and punitive damages;

i) Award Plaintiffs and the FLSA Class pre- and post-judgment interest on all amounts owed as allowed by law;

j) Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216(b), Md. Code Ann., Lab. & Empl. § 3-507.2, and Md. Code. Ann., Lab. & Empl. § 3-427(d); and

k) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted on this 17th day of February, 2017 by:

    /s/ David Rodwin
David Rodwin (Fed. Bar No. 18615)
Sally Dworak-Fisher (Fed. Bar. No. 27321)
THE PUBLIC JUSTICE CENTER
One North Charles Street, Suite 200
Baltimore, MD 21201
Tel: (410) 625-9409
Fax: (410) 625-9423
rodwind@publicjustice.org
dworak-fishers@publicjustice.org

*Attorneys for Plaintiffs*