FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 AUG 28 AM 11: 33
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WHITNEY DAVIS

    *Plaintiff,*

v.

UHH WEE, WE CARE INC. D/B/A UHH
WEE WE CARE ASSISTED LIVING,
ET AL.

    *Defendants.*

Civil Action No. ELH-17-494

## MEMORANDUM OPINION

In this wage dispute litigation, plaintiffs Whitney Greene Davis and Michael Chapman filed a collective action against Uhh Wee, We Care Inc., d/b/a Uhh Wee We Care Assisted Living ("Uhh Wee"); Uhh Wee, We Care Transportation, Inc. d/b/a Uhh Wee We Care Assisted Living ("Uhh Wee Transportation"); and Edwina Murray, the sole owner of Uhh Wee and Uhh Wee Transportation. *See* ECF 1 ("Complaint").[1] Plaintiffs requested, *inter alia*, unpaid minimum and overtime wages for work performed for Uhh Wee, a group home operator, and Uhh Wee Transportation, a provider of transportation services. *See* ECF 1 ("Complaint").

In particular, plaintiffs have alleged violations of the following statutes in connection with minimum and overtime wages: the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2017 Supp.), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E."); and the Maryland Wage and Hour Law ("MWHL"), L.E. §§ 3-401 *et seq.*

---

[1] The suit was filed in the name of Whitney Greene. By Order of April 20, 2018 (ECF 45), I granted the parties' "Consent Motion to Amend Case Caption" (ECF 44), so as to reflect that Greene had married and changed her surname to Davis. Accordingly, in the context of this Order, I shall refer to Davis, rather than Greene.

-1-

Additionally, the suit includes claims of quantum meruit on behalf of Davis and Chapman; fraud and negligent misrepresentation on behalf of Chapman; and wrongful discharge on behalf of Davis. ECF 1 at 11-16. Notably, Davis and Chapman represent different categories of plaintiffs: Chapman sought to represent similarly situated weekend care providers, while Davis purports to represent similarly situated dispatchers.

On June 9, 2017, Chapman sought to be dismissed from the suit. ECF 31-1; ECF 33. On September 11, 2017, defendant Murray filed a motion to dismiss Chapman, relying on Chapman's prior requests. ECF 31. I granted the motion on March 5, 2018. ECF 39. The circumstances surrounding Chapman's dismissal are discussed, *infra*. Although Chapman has been dismissed, I shall refer to "plaintiffs" in the plural throughout this Memorandum Opinion, unless otherwise noted.

In response to Chapman's request for dismissal, on June 22, 2017, plaintiffs' counsel filed a "Motion For Leave To Secure Intervention Of A Substitute Representative Plaintiff." ECF 14. The Court previously addressed portions of this motion. In particular, I vacated the deadlines as to the joinder of additional parties, amendment of the Complaint, and the filing of motions for conditional certification. *See* ECF 21, ¶ 1; *see also* ECF 14 at 5. However, the submission also asks the Court to order defendants to provide plaintiffs with the names and contact information of their current and former weekend care providers for any time between three years prior to the date of the filing of the suit (i.e., February 17, 2014), and "the present." I shall refer to this request as the "Motion." The Motion is pending.[2]

Defendants oppose the Motion. ECF 29 ("Opposition"). Plaintiffs filed a reply. ECF 32 ("Reply"). With leave of Court (ECF 40), defendants filed a surreply (ECF 41, "Surreply") on

---

[2] ECF 48 explains the prolonged pendency of this portion of the original motion (ECF 14).

March 5, 2018.

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background[3]

Chapman and Davis are former employees of Uhh Wee and Uh Wee Transportation. ECF 1, ¶ 1. Davis claims that she worked for these companies as a dispatcher for several weeks and that in at least one of those weeks, she worked over 40 hours. *Id.* ¶ 37. Moreover, she alleges that her only compensation for her work was a $200 check. *Id.* ¶ 41.

Chapman worked as a weekend care provider. ECF 1, ¶ 1. Chapman claimed that he was not paid the required overtime wages, even though he regularly worked 72-hour shifts for Uhh Wee. *Id.* ¶¶ 20, 28, 42.

In the Motion (ECF 14), plaintiffs' counsel recounts that Chapman unexpectedly asked plaintiffs' counsel to dismiss him from the case. *Id.* ¶¶ 9, 10. According to the Motion, Chapman "suddenly sent [plaintiffs'] counsel a fax message—sent from Defendants' business address—indicating that he wished to dismiss his claims[.]" *Id.* ¶ 9. Then, "during a subsequent conversation with [plaintiffs'] counsel, Mr. Chapman affirmed his desire to dismiss his claims but made clear that he wished to do so without prejudice." *Id.* ¶ 10.

Moreover, plaintiffs' counsel claims that defendant Murray materially altered time sheets for Chapman before providing them to plaintiffs in discovery. *Id.* ¶ 6-8; *see also* ECF 14-2 at 1-62 (62 time sheets for Chapman spanning 21 months). Further, the Motion asserts that plaintiffs' counsel discussed the altered time sheets with Chapman just one week before Chapman "suddenly" sought to withdraw from the case. ECF 14, ¶ 9.

---

[3] I shall limit the factual and procedural background to include only matters of relevance to the Motion.

Accordingly, plaintiffs' counsel asks the Court, among other things, to "allow reasonable time to secure an intervenor plaintiff to serve as representative in this proposed collective action," taking the place of Chapman. *Id.* ¶ 11. In particular, plaintiffs request "60 days . . . to move for intervention of a substitute representative plaintiff for weekend care providers." ECF 14-1 (plaintiffs' proposed order) ¶ 4; *see also* ECF 14 at 5. Further, to help identify an intervenor to replace Chapman, plaintiffs' counsel asks the court to order defendants to provide "the names and any and all contact information of each and every other care provider who worked on weekends at Defendants' group homes at any time from 3 years prior to date of filing of the Complaint through the present." ECF 14 at 5; *see also* ECF 14-1, ¶ 3.

On June 29, 2017— one week after plaintiffs filed the Motion—defendants' counsel filed a "Motion to Withdraw Appearance" (ECF 17), stating that he had been discharged by Murray. *Id.* ¶ 3; *see also* ECF 17-3 (letter from counsel to Murray citing their "irreconcilable differences"). By an Order of that same date (ECF 18), I granted that motion.

Notably, in an Order of June 30, 2017 (ECF 21), defendants were ordered, *inter alia*, "to produce to Plaintiffs' counsel, by August 3, 2017, the names and any and all contact information within Defendants' possession, custody, or control of each and every other care provider . . . who worked on at least one weekend at any of Defendants' group homes at any time from February 17, 2014, through the present[.]" *Id.* ¶ 3; *see also* ECF 14 at 5. However, because defendants' counsel had recently withdrawn his appearance (*see* ECF 17; ECF 18), I determined that this part of ECF 21 was "[s]ubject to timely objection from any future counsel for Defendants." ECF 21, ¶ 3. As indicated, defendants' new counsel timely filed an opposition (ECF 29) to the Motion (ECF 14).

Additional facts are included in the Discussion.

## II. Discussion

### A.

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 136 S. Ct. 2117, 2121 (2016); *Morrison v. Cty. of Fairfax, Va.*, 826 F.3d 758, 761 (4th Cir. 2016); *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240 (4th Cir. 2016). In particular, the FLSA established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works. The Act defines overtime as employment in excess of forty hours in a single workweek . . . ." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)); *see Perez v. Mrtg. Bankers Ass'n*, ___ U.S. ___, 135 S. Ct. 1199, 1204 (2015); *Integrity Staffing Solutions, Inc. v. Busk*, ___ U.S. ___, 135 S. Ct. 513, 516 (2014); *see also Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 1138 (2018); *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016).

Thus, the FLSA is now "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted). In *Monahan v. County of Chesterfield, Virginia*, 95 F.3d 1263, 1266-67 (4th Cir. 1996), the Court said: "The two central themes of the FLSA are its minimum wage and overtime requirements . . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." (Internal quotations omitted).

Under 29 U.S.C. § 216(b), a plaintiff may maintain a collective action against his or her employer. *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008). The district court has the discretion to "facilitat[e] notice to potential plaintiffs" and the "broad authority" to exercise control over a collective action and to govern the conduct of counsel and parties in the collective action. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (discussing Rule 23 class actions); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-71 (1989) (extending reasoning of *Gulf Oil* to collective actions and affirming the power of district courts to exercise control over collective actions); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010); *Randolph v. PowerCp Const., Inc.*, 41 F. Supp. 3d 461, 465 (quoting *Gulf Oil Co*, 452 U.S. at 100) ("A district court has 'the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'").

Generally, when assessing whether to certify a collective action pursuant to the FLSA, district courts in this circuit adhere to a two-stage process. *See, e.g., Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). In the first stage, "the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Butler*, 876 F. Supp. 2d at 566 (internal quotations omitted). If the court determines potential class members are "similarly situated," the class is conditionally certified. *Id.* In the second stage, which follows the conclusion of discovery, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] similarly situated in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Syrja*, 756 F. Supp. 2d at 686 (internal quotations and citations omitted) (alterations in *Syrja*).

Notably, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche, Inc.*, 493 U.S. at 170-71. This includes the "authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 170. Of import here, this authority is broad. Courts can "'regulate their practice in any manner consistent with'" federal or local rules. *Id.* (quoting Rule 83(b)).

Consistent with Rule 83, "courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Hoffmann-La Roche, Inc.*, 493 U.S. at 172-73 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631 (1962)). A district court can "begin its involvement early." *Id.* at 171. Indeed, "[o]ne of the most significant insights . . . is the wisdom [of] and necessity for early judicial intervention in the management of litigation." *Id.* at 171.

Exercising its broad discretion to intervene early on in a case, a court may decide to grant discovery prior to conditional class certification. 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1807 (3d ed.). Discovery at this stage typically focuses on "identifying the names and addresses of potential group members, and preliminarily determining whether those potential collective members are 'similarly situated.'" *Id.*

In *Hoffmann-La Roche, Inc.*, 493 U.S. at 168, 170, the Supreme Court upheld the district court's order that the employer produce "the names and addresses of the discharged employees" during discovery prior to a conditional certification. ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."). The Court concluded, "without pausing to explore alternative bases for the discovery," that it was enough that "the

discovery was relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of this case." *Id.* at 170.

District courts often provide for such discovery. Indeed, plaintiffs cite several applicable cases. ECF 32 at 3 n.3. *See, e.g., Fei v. WestLB AG*, 07-civ-8785 (HB) (FM), 2008 WL 7863592, at *2 (S.D.N.Y. Apr. 23, 2008) ("[C]onditional certification is not a prerequisite to the turnover of information concerning the identity of potential class members."); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) ("Because Plaintiffs are entitled to structure their suit to proceed as a class under Section 216(b), and because they may proceed with limited discovery prior to provisional certification, Defendants must comply with Plaintiffs' Interrogatories and Requests for Production of Documents pertaining to the addresses and phone numbers of similarly situated employees."); *Stillman v. Staples, Inc.*, 07-849 (KSH), 2007 WL 7261450, at *1 n.1 (D.N.J. July 30, 2007) ("This interrogatory is tailored to seek information that will enable the plaintiff to identify these individuals so that they may interview them to determine whether or not similarly situated Staples employees exist. . . . In addition, the response will allow the plaintiff to see if these individuals have any discoverable information about the defendant's practices."); *Morden v. T-Mobile USA, Inc.*, C05-2112 (RSM), 2006 WL 1727987, at *2-3 (W.D. Wash. June 22, 2006) (rejecting the argument that discovery of the names and addresses of potential FLSA class members was appropriate only following conditional certification, and ordering the discovery of that information); *Vivone v. Acme Mkts., Inc.*, 105 F.R.D. 65, 68 (E.D. Pa. 1985) (ordering discovery of contact information of other workers because individual plaintiffs "are plainly entitled to bolster their individual claims by attempting to prove a pattern or practice," and "[t]he persons whose identities are sought presumably have knowledge of the facts, and could be called as witnesses").

A court also has authority over the conduct of counsel and the parties, to avoid confusion or unfairness. *Hoffmann-La Roche, Inc.*, 493 U.S. at 169-71. As the Supreme Court has noted, Fed. R. Civ. P. 83 "endorses measures to regulate the actions of the parties to a multiparty suit." *Hoffmann-La Roche, Inc.*, 493 U.S. at 172 (citing *Gulf Oil*, 452 U.S. at 99 n.10). In addition to the authority to prevent unfairness, the "district court also has the responsibility to insure that all parties act fairly while the court decides whether and how the action will move forward under the FLSA." *Billingsley v. City Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014) (citing *Hoffmann-La Roche, Inc.*, 493 U.S. at 169-71).

## B.

Plaintiffs contend that during the Court's conference call with counsel on May 22, 2017, defendants (via counsel) promised to provide the documents sought in the Motion. ECF 14, ¶ 4; ECF 32 at 2. Plaintiffs further argue that even without defendants' promises, the names and addresses could have been obtained through discovery, despite the absence of conditional certification. ECF 32 at 3. Further, plaintiffs' counsel highlights the "serious and suspicious nature" of Chapman's withdrawal from the case as well as Chapman's prior assurances to plaintiffs' counsel that there are other "similarly situated" workers. ECF 14, ¶ 11.

Defendants' opposition to the Motion focuses on three arguments. First, defendants claim that discovery can be used to identify other potential class members only after conditional class certification. ECF 29 at 1-3. Second, they contend that allowing for the discovery requested here would facilitate a fishing expedition. *Id.* at 4. Subsequent plaintiffs, they argue, could bring FLSA actions and use discovery to find a putative class without evidence that "similarly situated" plaintiffs exist. *Id.* Third, they argue that plaintiffs do not allege sufficient facts to satisfy the minimum threshold needed to meet conditional class certification. *Id.* at 4-5.

Defendants' concerns are hardly specious. Courts should manage discovery to ensure that it does not become a fishing expedition. Indeed, courts have declined to grant conditional class certification when no manageable class exists. *See, e.g., D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995); *Bouthner v. Cleveland Const., Inc.*, RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) (quoting *D'Anna*). A judge of this court reasoned in *D'Anna* that, "[a]s a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists." 903 F. Supp. at 894 (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991)).

Still, as already indicated, courts can grant pre-certification discovery for potential class members. *See Hoffmann-La Roche, Inc.*, 493 U.S. at 168, 170. Even in *D'Anna*, the Court concluded that it would "allow broad discovery" and permit plaintiff "to file a new motion to proceed with collective action following such discovery if plaintiff can establish that class treatment is warranted at that time." *D'Anna*, 903 F. Supp. at 894.

The question here is whether I should grant plaintiffs' request for discovery concerning potential class members related to Chapman's claims as a weekend care provider, given that his overtime claims as a weekend care provider are no longer before the Court. On the one hand, because of Chapman's unexpected dismissal, plaintiffs' Complaint lacks the support typically needed to justify plaintiffs' request for information concerning defendants' weekend care providers.[4] *Cf. D'Anna*, 903 F. Supp. at 894. This is because Davis, the remaining plaintiff, was a dispatcher, not a weekend care provider. Discovery should not be a fishing expedition for a

---

[4] Defendants contend that the Complaint does not allege enough facts to merit conditional certification. But, this issue is premature as no motion for conditional certification is before the Court.

similarly situated class of plaintiffs, let alone an entirely different class. *Severtson*, 137 F.R.D. at 266-67.

On the other hand, this case is not typical. The Court cannot ignore the unusual chain of events that led to Chapman's dismissal. Moreover, it must acknowledge the specter of document tampering that shrouds Chapman's departure from the case and suggests an effort to thwart the claim of weekend care providers.

These events began when Murray provided plaintiffs' counsel with 62 separate timesheets for Chapman. ECF 14-2 at 1-62 (covering the period from January 2015 to October 2016). As plaintiffs' counsel noted, "the end time of the shifts" appears to have been changed "from a.m. to p.m., turning an upper-case 'A' into a lower-case 'p.'" ECF 14, ¶ 6.

In the Complaint, Chapman had alleged that he "regularly worked a 72-hour weekend shift." ECF 1, ¶ 20. However, the timesheets indicate that Chapman's 72-hour weekend shift (i.e., three consecutive 24-hour shifts) has apparently been cut down to three separate 12-hour shifts. *Id.* ¶¶ 6-7; *see also* ECF 14-2 at 1-62; ECF 14-3 (an enlarged version of the time sheet covering August 21, 22, and 23, 2015). I have closely examined these time sheets. In my view, they appear to be altered. To illustrate, an enlarged copy of one of them (ECF 14-3) is reproduced in the Appendix to this Memorandum Opinion.

Around this time, defendants' counsel and Murray experienced "irreconcilable differences." ECF 17-3. Defendants' counsel then filed a motion to withdraw his appearance in the case. ECF 17. The Court cannot draw any conclusions based on these limited facts, but the timing is nevertheless striking.[5]

---

[5] Under the Maryland Attorneys' Rules of Professional Conduct, "[a]n attorney shall not knowingly . . . (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; . . . or (4) offer evidence that the

As indicated, just one week after plaintiffs' counsel told Chapman about the apparent alterations, Chapman sent plaintiffs' counsel a fax message requesting dismissal from the case. ECF 14, ¶ 9; ECF 14-3 (the fax message). Curiously, the message was sent from defendant Murray's business address. *See* ECF 14, ¶ 9; ECF 14-3 (displaying Uhh Wee's name in the header). On July 10, 2017, Chapman sent plaintiffs' counsel another fax directing counsel to dismiss the case as to him. *See* ECF 24, ¶ 1. This fax, too, was sent from defendant Murray's business address. The fax was accompanied by a cover page from Murray. *Id.* Murray then filed this fax message with the Court four days later. ECF 22.

These events raise more questions than answers. Murray's actions have been at best unusual and perhaps worse. Murray's questionable conduct cannot be used as a vehicle to thwart discovery.

Therefore, in the exercise of my discretion, I shall grant plaintiffs the discovery requested in the Motion. In doing so, I am also fulfilling my "responsibility to insure that all parties act fairly while the court decides whether and how the action will move forward under the FLSA." *Billingsley v. City Trends, Inc.*, 560 F. App'x at 921 (citing *Hoffmann-La Roche, Inc.*, 493 U.S. at 169-71).

---

attorney knows to be false." Md. Code (2018, June 2018 Supp.), Rule 19-303.3(a)(2), (4) of the Maryland Rules; *see also* Rule 19-301.2(d) ("An attorney shall not . . . assist a client, in conduct that the attorney knows is criminal or fraudulent"). These duties "apply even if compliance requires disclosure of information otherwise protected by Rule 19-301.6 [Confidentiality of information]." *See* Rule 19-303.3(b); *see also* Rule 19-303.3 cmt. 7 ("[I]f necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. . . . [T]he alternative is that the attorney cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement.").

Additionally, "[c]ourts are empowered 'to fashion an appropriate sanction for conduct which abuses the judicial process,' such as 'an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side.'" *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S.Ct. 1178, 1186, (2017)).

### III. Conclusion

For the foregoing reasons, defendant's Motion shall be granted. An Order follows.

Date: August 28, 2018

                                                               /s/
Ellen Lipton Hollander
United States District Judge