IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WHITNEY DAVIS,
*Plaintiff*,

v.

UHH WEE, WE CARE INC. D/B/A UHH
WEE WE CARE ASSISTED LIVING,
ET AL.
*Defendants.*

Civil Action No. ELH-17-494

## MEMORANDUM OPINION

This Memorandum Opinion addresses a motion for sanctions filed by plaintiff Whitney Davis on October 18, 2018, in her wage and hour case. ECF 52. The motion is supported by a memorandum of law (ECF 52-1) (collectively, the "Motion" or "Motion for Sanctions") and several exhibits. ECF 52-3 through ECF 52-11. In particular, under Fed. R. Civ. P. 37, plaintiff moved for a finding of civil contempt against defendant Edwina Murray, for failure to comply with the Court's Order of August 28, 2018. *See* ECF 50. Plaintiff also requested legal fees.

The Order of August 28, 2018, was spawned by defendants' failure to comply with an earlier Order, issued on June 30, 2017. ECF 21. In ECF 21, I ordered Ms. Murray to produce, by August 3, 2017, "the names and all contact information within Defendants' possession, custody, or control, of each and every other care provider . . . who worked on at least one weekend at any of Defendants' group homes between February 17, 2014, and June 22, 2017." *Id.*[1] The Court subsequently extended that deadline three times over the course of nearly two years. ECF 30; ECF 50; ECF 70. And, in an Amended Order of April 12, 2019 (ECF 70), the Court directed Ms. Murray to comply with ECF 50 by May 1, 2019.

---

[1] The language in the Order was proposed by plaintiff's counsel.

Ms. Murray failed to respond. Therefore, by Order of May 6, 2019 (ECF 72), I directed Ms. Murray to appear before this Court on June 28, 2019, to show cause as to why I should not find her in contempt for failure to comply with the Court's Order of August 28, 2018 (ECF 50), as well as the Order of April 12, 2019 (ECF 70). Ms. Murry appeared with pro bono counsel at the show cause hearing. She testified, and oral argument was presented.

## I.        Factual and Procedural Background

On February 17, 2017, plaintiffs Michael Chapman and Whitney Greene, who has since legally changed her name to Whitney Davis, sued defendants Uhh Wee, We Care Inc. and Uhh Wee, We Care Transportation Inc. (collectively, "Uhh Wee"), as well as Ms. Murray, the owner of Uhh Wee. ECF 1 (the "Complaint").

Chapman and Davis alleged that they are former employees of defendants, and that defendants failed to pay minimum and overtime wages, in violation of the Fair Labor Standards Act ("FLSA") as amended, 29 U.S.C. §§ 201, *et seq*.; the Maryland Wage and Hour Law ("MWHL"), as amended, Md. Code (2016 Repl. Vol.), §§ 3-401 *et seq*. of the Labor and Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWCPL"), as amended, L.E. §§ 3-501 *et seq*. ECF 1, ¶ 3. Davis also states that defendants wrongfully terminated her for her disability, in violation of the Maryland Employment Anti-Discrimination Law, as amended, L.E. §§ 20-602 *et seq.* ECF 1, ¶ 96.

Defendants were served with a copy of the summons and the Complaint on March 9, 2017. ECF 3. On April 17, 2017, plaintiffs filed a motion requesting a default judgment against defendants for failure to plead. ECF 4. The Court entered an order of default on April 19, 2019, for want of answer or other defense. ECF 5. On April 21, 2017, the parties filed a joint motion to

vacate the clerk's entry of default. ECF 6. That same day, the motion was granted, and the entry of default was vacated. ECF 7.

Defendants answered the Complaint on April 28, 2017. ECF 11. The Court held a telephone status conference with counsel on May 22, 2018. *See* Docket. A Scheduling Order followed on May 23, 2017. ECF 13.

On June 20, 2017, Chapman sent plaintiffs' counsel a fax message in which he sought to be dismissed from the suit. ECF 14-4. In response, on June 22, 2017, plaintiffs' counsel filed a "Motion for Leave to Secure Intervention of a Substitute Representative Plaintiff." ECF 14 ("Motion for Leave"). In that motion, plaintiffs' counsel informed the Court that they had "uncovered material alterations on Mr. Chapman's time records." ECF 14 at 3. Counsel asked the Court to grant Davis time "to move for intervention of a substitute representative plaintiff for weekend care providers" to replace Chapman. *Id*. Most important for present purposes, counsel asked the Court to "Order Defendants to produce to Plaintiffs' counsel, by July 3, 2017, the names and any and all contact information of each and every other care provider who worked on weekends at Defendants' group homes at any time from 3 years prior to date of filing of the Complaint through the present." *Id*. at 5.

In response, the Court held a telephone conference with counsel on June 23, 2017. *See* Docket. Plaintiffs' counsel advised that they would submit an amended proposed order with respect to ECF 14. *See* ECF 23 (Letter order of July 14, 2017) at 2.

On June 29, 2017, counsel for defendants moved to withdraw from the case, stating that they had been discharged by Ms. Murray. ECF 17. I granted the motion to withdraw by Order of June 29, 2017. ECF 18. The Clerk notified defendants, in a letter dated June 29, 2017, of the

implications of counsel's withdrawal. ECF 19. And, in an Order to defendants dated June 30, 2017 (ECF 20), I explained that because Uhh Wee is a corporation, it may only proceed with counsel. I granted Uh Wee until July 31, 2017, to obtain new counsel. *Id.*

By Order of June 30, 2017 (ECF 21), the Court issued an Order that had been contemplated during the telephone conference with counsel for all parties on June 23, 2017. That conference included the attorney who was defense counsel as of that time. I directed defendants to preserve all documents and records concerning any person who worked as a care provider at defendants' homes, in all formats. *Id.* ¶ 2. And, I ordered defendants to "produce to Plaintiff's counsel, by August 3, 2017, the names and any and all contact information . . . of each and every other care provider . . . who worked on at least one weekend at any of Defendants' group homes at any time from February 17, 2014, through the present," *i.e.*, June 2017. *Id.* ¶ 3.

The Court received correspondence from Ms. Murray on July 14, 2017, concerning the status of the case. ECF 22. She asserted that Chapman had asked his lawyers to dismiss the case, with prejudice. In support, Ms. Murray attached a letter dated June 27, 2017, which appeared to have been signed by Chapman. *Id.* at 2. In view of the letter, Ms. Murray asked the Court to dismiss Chapman's case, with prejudice. *Id.* at 1. In addition, she asked the Court to provide her with additional time to obtain counsel for Uhh Wee. *Id.*

By Order of July 14, 2017, I directed plaintiffs' counsel to submit a status report by July 28, 2017. ECF 23 at 2. I also granted Uhh Wee an extension of time, through August 31, 2017, in which to retain counsel. *Id.* Defendants were also granted an extension of time, through August 31, 2017, in which to comply with the Court's Order of June 30, 2017 (ECF 21),

concerning production of employee contact information.  *Id*.  And, I directed the parties to submit another status report by September 8, 2017.  ECF 23.

On July 28, 2017, plaintiffs submitted a status report stating that on July 10, 2017, the Public Justice Center, which employs plaintiffs' counsel, received a fax message purporting to be from Mr. Chapman, asking for dismissal of his claims.  ECF 24 at 1.  Notably, the fax message was sent from defendants' business address.  *Id*. On July 31, 2017, Ms. Murray again asked the Court to dismiss the case, with prejudice, in light of Mr. Chapman's request to withdraw from the case.  ECF 25.

Kenneth Gauvey, Esq. entered his appearance as defense counsel on August 2, 2017.  ECF 26.  And, on August 29, 2017, defendants filed an opposition to plaintiffs' Motion for Leave.  ECF 29.  Further, on September 11, 2017, they moved to dismiss Chapman, citing his prior requests to be dismissed from the case.  ECF 31.

The next day, September 12, 2017, plaintiffs replied to defendants' opposition to the Motion for Leave.  ECF 32.  Then, on September 15, 2017, defendants moved for leave to file a surreply to "address the serious misstatements in 'Plaintiffs' Reply in Support of Motion for Leave to Secure Intervention of a Substitute Representative Plaintiff.'"  ECF 36 at 1.  That motion was subsequently granted. ECF 40.

On September 25, 2017, plaintiffs' counsel filed an opposition to defendants' motion to dismiss Mr. Chapman.  ECF  37.

Davis filed a "Motion to Compel Discovery" (ECF 38), along with several exhibits, on March 2, 2018.  ECF 38-2 to ECF 38-5.  Davis moved to compel defendants to produce documents "responsive to her Interrogatories and Request for Production."  ECF 38 at 1.

On March 5, 2018, I granted defendants' motion to dismiss Chapman from the case. ECF 39. Therefore, he was terminated as a party.

On March 15, 2018, Davis withdrew her discovery motion after being advised by defendants that they would provide responses to her "Interrogatories and Request for Production." ECF 42. By Order of March 16, 2018, I approved that motion. ECF 43.

The parties filed a joint status report on August 2, 2018. ECF 47. Based upon that status report, I acknowledged that, in my Order of June 30, 2017 (ECF 21), I did not resolve plaintiff's request for intervention of a substitute representative plaintiff. *See* ECF 48 (Order of August 2, 2018).

By Memorandum (ECF 49) and Order (ECF 50) of August 28, 2019, I granted plaintiff's motion for discovery concerning potential class members related to Chapman's prior claims as a weekend care provider, as well as plaintiff's request for intervention of a substitute representative plaintiff. In addition, I observed that Ms. Murray appeared to have produced altered time sheets. ECF 49 at 11. In this regard, I stated that "the specter of document tampering . . . shrouds Chapman's departure from the case and suggests an effort to thwart the claim of weekend care providers." *Id.*

Moreover, I directed that by September 27, 2018, defendants "shall provide plaintiff with the names and all contact information within defendants' possession, custody, or control, of every care provider who worked at least one weekend at any of defendants' group homes between February 17, 2014 and June 22, 2017." ECF 50. Plaintiff was also granted 30 days from the date of defendants' compliance with the Order to move for intervention of a substitute representative plaintiff for weekend care providers. *Id*.

On October 10, 2018, plaintiff filed a "Motion for Sanctions and Attorneys' Fees." ECF 52. She asserted that the defendants had failed to comply with the Order of August 28, 2018, as they had not provided plaintiff with the names and contact information for the specified care providers. ECF 52-1 at 1. Plaintiff moved to hold defendants in civil contempt for their violation of the Order of August 28, 2018. *Id*. at 5. In addition, plaintiff requested attorneys' fees, as well as a fine of $200 per day for each day of noncompliance. *Id.* at 2. In particular, she sought a total of $4,921.00 in attorneys' fees for work performed in connection with the Motion for Leave ($1,827.50) and the Motion for Sanctions ($3,093.50). *Id.* at 10

Thereafter, on October 23, 2018, defense counsel moved to withdraw. ECF 53. The same day, defendants filed a "Motion to Extend Time to Respond" in light of counsel's motion to withdraw. ECF 54. By orders of October 23, 2018, I granted defendants' motion for extension through November 23, 2018 (ECF 55), and defense counsel's motion to withdraw. ECF 56.

On November 29, 2018, Ms. Murray requested a postponement of the "case" due to the withdrawal of defense counsel, which allegedly left her "legally paralyzed." ECF 58. She also stated that she needed additional time to "gather all of the necessary documentation, witnesses, affidavits, etc. to effectively refute the allegations alleged." *Id*. In addition, she asked the court to appoint counsel, due to her severe financial difficulties. *Id*. I found no basis to provide counsel for Uhh Wee as a corporation, nor any basis to appoint counsel for Ms. Murray. ECF 59 at 2. Therefore, that motion was denied by Order of December 17, 2018. *Id.* In that Order, the Court again advised Ms. Murray that Uhh Wee, as a corporation, "may only appear through counsel." *Id*. Conversely, she was told that she could represent herself. *Id*.

On January 15, 2019, I updated the Scheduling Order (ECF 13) because it had become stale, under the circumstances. ECF 60. On January 28, 2019, plaintiff moved for default judgment against Uhh Wee. ECF 61. Plaintiff also moved to modify the Amended Scheduling Order. ECF 62. And, on January 29, 2019, Ms. Murray again moved for Appointment of Counsel. ECF 63.

The Clerk entered a default against Uhh Wee on February 1, 2019, because Uhh Wee had "failed to plead or otherwise defend as directed in said Summons and as provided by the Federal Rules of Civil Procedure." ECF 64. Notice of default was given to Uhh Wee on February 1, 2019. ECF 65.

On February 5, 2019, Ms. Murray filed, on her own behalf and on behalf of Uhh Wee, a "Motion for Delay of Amending Scheduling Orders." ECF 66. That same day, she also filed, on behalf of Uhh Wee only, an opposition to the clerk's entry of default. ECF 67. Because Ms. Murray is not an attorney, her filings for the corporate entities have no legal effect.

By Memorandum (ECF 68) and Order (ECF 69) of April 11, 2019, I granted plaintiff's request to modify the Amended Scheduling Order, and I denied Ms. Murray's request for counsel, as well as her motion to delay the issuance of the Amended Scheduling Order. *Id.* Significantly, I ordered defendants to comply with the Order of August 28, 2018. By an Amended Order of April 12, 2019 (ECF 70), I clarified that defendants had to produce the information by May 1, 2019.

On May 3, 2019, plaintiff filed a status report stating: "Plaintiff has received no information or other correspondence from Ms. Murray." ECF 71. A Show Cause Order followed on May 6, 2019. ECF 72. There, the Court directed Ms. Murray and representatives of plaintiff to appear for a "show cause contempt hearing" on June 28, 2019. In particular, Ms. Murray was directed to

show cause at the hearing as to why she "should not be found in contempt for failure to comply with this Court's Orders of August 28, 2018 (ECF 50) and/or April 12, 2019 (ECF 70)." ECF 72 at 2-3.

In view of the show cause contempt hearing, on May 13, 2019, this Court appointed pro bono counsel on behalf of Ms. Murray "for the limited purpose of representation" at the civil contempt hearing. ECF 73. On May 17, 2019, Ms. Murray moved to appoint an attorney for show cause hearing. ECF 74. The motion was denied as moot, by Order of May 17, 2019. ECF 75.

On May 24, 2019, plaintiff filed a "Notice of Service of Show Cause Order" to show that counsel for Ms. Murray accepted service of the Show Cause Order on her behalf. ECF 76. The show cause contempt hearing was held on June 28, 2019. Ms. Murray appeared, with court-appointed counsel.

During oral argument, plaintiff's counsel maintained that Ms. Murray had constructive or actual knowledge of the requirements of the Order of August 28, 2018. ECF 50. In support of his contention, plaintiff's counsel discussed his email correspondence with Mr. Gauvey, who served as defense counsel from August 2, 2017, to October 23, 2018. ECF 52-3 to 52-6. In the first email sent to Mr. Gauvey, dated October 1, 2018, plaintiff's counsel sought the contact information ordered by the Court on August 28, 2018. ECF 52-3; *see* ECF 50. As indicated, that Order (ECF 50) instructed defendants to provide plaintiff with the requisite contact information by September 27, 2018. In response to this email, on October 1, 2018, defendant's counsel provided plaintiff's counsel with the name of one weekend employee, Lajuana Brown, but defense counsel did not provide Ms. Brown's address. ECF 52-4.

On October 2, 2018, plaintiff's counsel sent Mr. Gauvey an email, stating that defense counsel's response was inadequate. ECF 52-5. Plaintiff's counsel reasoned that defendants maintain three group homes, and it was their "understanding" that "multiple individuals provided care on the weekends at each [home] during the relevant time period." ECF 52-5; *see* ECF 52-7. Presumably, plaintiff's counsel believes that Ms. Brown and Mr. Chapman could not have attended to all residents across three group homes.

Mr. Gauvey replied by email on October 5, 2018, stating that the other facilities listed, the House of TLC and the Allen House residences, were neither owned nor managed by defendants. ECF 52-6. However, the Uhh Wee website, on the "About Us" page, lists all three home facilities as part of "Uhh Wee We Care Assisted Living." ECF 52-7. Additionally, plaintiffs' counsel noted that Michael Chapman's timesheet (ECF 14-3) referenced the Allen House as his "Department."

When discussing the remedy sought by plaintiff, plaintiff's counsel noted that two years had passed since the Court's first production order. He also represented that Ms. Davis has suffered due to the delay and defendants' failure to comply with the Court's orders. To state the obvious, this case has been delayed considerably. And, according to plaintiff's counsel, this has taken a toll on plaintiff.

Plaintiff's counsel also stated that at 3:00 p.m. on June 27, 2019, *i.e.*, the day before the contempt hearing, Ms. Murray produced the names of three weekend employees. Specifically, she identified Sharray Gross, who is deceased; Lajuana Brown, whose name Ms. Murray had previously provided; and Michael Chapman, who had been a plaintiff in this suit. Ms. Murray also provided Ms. Brown's address, which Ms. Murray had not provided when she originally produced Ms. Brown's name in October 2018. *See* ECF 52-4 at 2.

Plaintiff's counsel represented to the Court that Ms. Murray has not produced the names of at least two other employees of whom he was aware. However, counsel was unwilling to disclose their names due to ethical concerns.

Ms. Murray testified at the hearing.[2] She stated that she is the sole owner of Uhh Wee, but not its only manager or operator of the company. She also testified that each facility is licensed for only three residents, with one employee working each 72-hour weekend shift.[3] The staff, according to Ms. Murray, was made aware that they would not be paid for the hours they slept during the weekend shift, even though they were "on duty" for the full 72-hours.

On cross-examination, Ms. Murray testified that she gave her first attorney, Mr. Gauvey, the names of Ms. Brown, Ms. Gross, and Mr. Chapman, in compliance with the Court's Order of June 30, 2017. ECF 21. However, she alleged that Mr. Gauvey did not provide these names to plaintiff's counsel. According to Ms. Murray, Mr. Gauvey did not want Mr. Chapman's name as he was already listed as a plaintiff in the underlying suit. Likewise, he did not want Ms. Gross's name because she was deceased, and thus could not join a collective action. Ms. Murray also testified that Mr. Gauvey specifically told her that the Court did not want the names of Uhh Wee's other managers: Lakisha Wheeler and Sherifia Howard. As plaintiff's counsel noted, all three of their names were already listed on Uhh Wee's public website. https://www.uhhweewecareassistedliving.com/ STAFF.html.

---

[2] The Court does not have a transcript of the proceedings. Therefore, the Court relies on its own notes.

[3] Plaintiff's counsel stated that each group home was licensed for four to nine residents. Likewise, the parties dispute whether Uhh Wee operates group homes or assisted living facilities. However, for the purposes of this Memorandum Opinion, neither issue is of great import.

Ms. Murray also stated that she did not receive the Court's Order of April 11, 2019 (ECF 69), or its Amended Order of April 12, 2019. ECF 70. The Amended Order directed her to comply with the Court's Order of August 28, 2018 (ECF 50) by May 1, 2019. ECF 70.

At the conclusion of the hearing, I deferred ruling on plaintiff's Motion for Sanctions. Ms. Murray agreed to produce, by noon on July 9, 2019, the following records for Uhh Wee: (1) Bank statements of the corporate defendants, (2) IRS Form 1099s, (3) W-2s, (4) payroll records, (5) daily duty sheets, and (6) time sheets for all individuals at all facilities that worked the 72-hour weekend shift from 6 a.m. Friday to 6 a.m. Monday between February 17, 2014 and June 22, 2017. An Order was entered to that effect on July 1, 2019. ECF 78. Since the hearing, the parties have not submitted any filings to the Court. *See* Docket.

## II.    Discussion

### A.    Civil Contempt

District courts exercise broad discretion over discovery issues. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003). Of relevance here, Rule 37(b) authorizes a district court to issue sanctions for failure to comply with a court order concerning discovery. Fed. R. Civ. P. 37(b)(2)(A).

The purposes of Rule 37(b) sanctions are to (1) prevent a party from being "able to profit from its own failure to comply," (2) "to secure compliance with the particular order at hand," and (3) to serve as a "general deterrent." *See, e.g.*, *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). One such sanction is civil contempt. Under

Fed. R. Civ. P. 37(b)(2)(A)(vii), the court may "treat[ ] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

In addition, a court has the inherent power to order sanctions, so as "to preserve the integrity of the judicial process," *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 157 (4th Cir. 2017), and "to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order." *Life Technologies Corp. v. Govindaraj*, ___ F.3d ___, 2019 WL 3308532, at *6 (4th Cir. July 24, 2019); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Buffington v. Baltimore Cty.*, 913 F.2d 113, 132 n.15 (4th Cir. 1990). As the Supreme Court explained: "Contempts such as failure to comply with document discovery, for example, while occurring outside the court's presence, impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994).

However, a court may not exercise its contempt power if there is "fair ground of doubt as to the wrongfulness of" the conduct in question. *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795, 1801 (2019) (citation and emphasis omitted); *see also Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (concluding that contempt finding is unwarranted if court's decree is "'too vague to be understood'") (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). Moreover, "a party must be able to discern from the language of a court's order the actions necessary to comply with the court's directive." *Life Technologies Corp.*, 2019 WL 3308532, at *6; *see also Taggart*, 139 S. Ct. at 1802 ("[P]rinciples of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." (citations, quotation marks, and brackets omitted)); *Gascho*,

875 F.3d at 800 (contempt sanctions are "reserved for those who 'fully understand' the meaning of a court order and yet 'choose to ignore its mandate.'" (quoting *Phila. Marine Trade Assoc.*, 389 U.S. at 76) (alterations omitted).

Contempt is civil rather than criminal "[w]hen the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained . . . . If the relief provided is a fine, it is remedial when it is paid to the complainant." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010)

To establish civil contempt, a movant must show each of the following elements by "clear and convincing evidence":

> "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result."

*United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

"To be clear and convincing, evidence must 'place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are 'highly probable.'" *Ali*, 874 F.3d at 831 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Significantly, willfulness is not an element of civil contempt. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).

Once the moving party meets its burden, the burden shifts to the contemnor to demonstrate that she "'ma[de] in good faith all reasonable efforts to comply with'" the court's order. *Ali*, 874 F.3d at 832 (quoting *United States v. Darwin Const. Co.*, 873 F.2d 750, 754 (4th Cir. 1989)).

Notably, "lack of possession or control of records . . . may not be raised for the first time in a [civil] contempt proceeding." *United States v. Rylander*, 460 U.S. 752, 757 (1983). The "only exception is 'present inability to comply' i.e., an inability to comply that arises after the enforcement proceeding and exists at the time of the contempt proceeding." *Ali*, 874 F.3d at 829.

Where the contemnor cannot comply, "neither the moving party nor the court has any reason to proceed with the civil contempt action." *Rylander*, 460 U.S. at 75. However, an "enforcement order establishes a presumption" that the nonmovant "possesses responsive documents." *Ali*, 874 F.3d at 831. And, the nonmovant has the burden of production in raising an impossibility defense. *Rylander*, 460 U.S. at 75 (citing *McPhaul v. United States*, 364 U.S. 372, 379 (1960)).

The Fourth Circuit explained in *Ali*, 874 F.3d at 831:

> [E]ven when a defendant produces *some* documents in response to an enforcement order, the complainant need not show that the defendant has *actual possession of other* responsive documents that she failed to produce. Rather, because failure to produce documents presumptively within the defendant's possession constitutes an actual or constructive violation of an existing enforcement order, it is enough for the complainant to demonstrate, by clear and convincing evidence, that the defendant's production was *presumptively* incomplete. *See* [*Rylander*, 460 U.S. at 761 n.3]. This can be done, for example, by demonstrating that any complete production would necessarily include certain types of documents—e.g., a production of "bank records" that omits bank statements is presumptively incomplete. The complainant need not identify each missing bank statement and need not prove that the defendant has access to that specific statement.

Sanctions for civil contempt are remedial. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004); *Buffington*, 913 F.2d at 133. The purpose of sanctions for civil contempt is "to coerce obedience to a court order and to compensate a party for losses sustained as a result of the contumacy." *In re General Motors*, 61 F.3d at 258 (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1998)). Indeed, civil contempt sanctions are "employed not

to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

The district court "can impose a fixed, monetary, civil contempt sanction to compensate for losses sustained by violation of a discovery order[.]" *Buffington*, 913 F.2d at 134. But, "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation omitted). Moreover, a fine may not be punitive. "If monetary assessment of a specific amount is neither compensatory nor conditioned on the occurrence of future violation of court orders, it raises a presumption that the fine is punitive in nature" and therefore cannot be imposed as part of a civil contempt proceeding. *In re Kave*, 760 F.2d 343, 352 (1st Cir. 1985).

The aggrieved party is entitled to be made whole "for damages caused by the contemnor's conduct." *Id.* at 351. Thus, a compensatory fine "must be based upon evidence of the complainant's actual losses, and his right to recover, as in any civil litigation, is dependent upon the outcome of the underlying controversy." *Id.* Accordingly, the "fine imposed . . . must not exceed the actual damages caused the offended party by a violation of the court's order." *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982).

A court may impose a coercive fine to obtain compliance with its order. *Bagwell*, 512 U.S. at 833. When ordering a coercive fine, a court must provide the contemnor with an opportunity to purge. And, in imposing a coercive fine, a court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested

sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947).

Plaintiff moved for the Court to hold defendants in civil contempt under Fed. R. Civ. P. 37 for failure to produce the contact information "of every care provider who worked at least one weekend at any of defendants' group homes between February 17, 2014, and June 22, 2017" for nearly two years. ECF 52-1 at 2. In connection with a finding of civil contempt, plaintiff seeks the imposition of a fine of $200 per day for each day that the defendants' noncompliance continues. ECF 52-1 at 2.

As discussed, defendants failed to comply with clear prior orders of this Court. But, plaintiff's silence since the hearing suggests that, at long last, defendants have produced the requested discovery information, and have complied with the Court's Order of July 1, 2019. *See* Docket. As a result, contempt would no longer serve a coercive function. And, in this case, there is no quantitative harm to plaintiff. The injury to Davis, due to the delay, is not uncommon. As I see it, the remedial function of contempt is best accomplished here through the award of reasonable attorneys' fees, pursuant to Rule 37(b)(2)(C).

Accordingly, I shall deny plaintiff's motion seeking a finding of civil contempt, as well as the sanction of $200 per day. That sum is punitive and no longer necessary.

### B.    Attorneys' Fees

### 1.

In addition to moving for civil contempt, plaintiff moved for attorneys' fees under Fed. R. Civ. P. 37. ECF 52-1 at 2. Rule 37 "requires a court to award certain reasonable attorneys' fees and expenses when a party has failed to comply with a court order." *U.S. Home Corp. v. Settlers*

*Crossing, LLC*, DKC-08-1863, 2013 WL 3713671, at *3 (D. Md. July 15, 2013); *accord Porreca*

*v. Mitchell L. Morgan Mgmt., Inc.*, JFM-08-1924, 2009 WL 400626, at *2 (D. Md. Feb. 13, 2009).

Specifically, Rule 37(b)(2)(C) states: "Instead of or in addition to [other sanctions for disobeying

a discovery order], the court must order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of expenses unjust."

On June 30, 2017, I ordered defendants to produce, by August 3, 2017, the names and

contact information of every care provider who worked at least one weekend at any of defendants'

group homes between February 17, 2014 and June 2017. ECF 21. I subsequently extended that

deadline three times over the course of two years. ECF 30; ECF 50; ECF 70. In that period,

defendants produced one name, Lajuana Brown, on October 1, 2018, but without an address.

ECF 52-4. It was not until 3:00 p.m. on June 27, 2019, the day before the show cause hearing, that

an address for Brown was provided, along with two other names, Sharray Gross and Michael

Chapman. The names of two managers (Lakisha Wheeler and Sherifia Howard), who occasionally

worked weekend shifts, were omitted.

Ms. Murray conveniently blamed her former lawyer, Mr. Gauvey, who was not present at

the hearing. She testified that she did not produce the names because he advised that plaintiff did

not need or want them. However, Ms. Murray has not previously offered this explanation to

plaintiff. Nor has she offered it in any of her many written submissions to the Court. She also

claimed she did not receive the Court's orders of April 11, 2019 (ECF 69) and April 12, 2019.

ECF 70. That seems implausible, given that Ms. Murray appears to have received all other filings

from the Court, and the only orders she did not receive are the two that are relevant to the issue of contempt and the show cause hearing.

In my view, plaintiff has not offered an adequate justification for failure to comply with the Court's orders. Therefore, pursuant to Rule 37(b)(2)(C), I will award reasonable attorneys' fees to plaintiff.

The amount of attorneys' fees to be awarded in any case is left to the discretion of the district court. *See*, *e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). But, the award must be "reasonable." *E.g.*, *McAfee*, 738 F.3d at 88. "The Supreme Court has indulged a 'strong presumption'" that the "lodestar" figure, as defined by the Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89. To determine the lodestar figure, courts must multiply "'the number of reasonable hours expended times a reasonable rate.'" *Id*. (quoting *Robinson*, 560 F.3d at 243).

The Fourth Circuit has adopted a list of twelve factors, first articulated by the Fifth Circuit, to aid in determining "what is reasonable in terms of hours expended and the rate charged." *Id*. (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors are as follows, *Johnson*, 488 F.2d at 717-19:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

In ruling on an "'award for a discovery dispute,' 'the most relevant Johnson factors' may be 'the time and labor expended, the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, and the experience, reputation and ability of the attorneys.'" *Uche*, 2014 WL 5382335, at *3 (quoting *Davis v. Rouse*, WDQ-08-3106, 2012 WL 3059569, at *3 (D. Md. July 25, 2012) (Gallagher, M.J.)); *see also Davis*, 2012 WL 3059569, at *3 ("As other courts have noted, many of the twelve *Johnson* factors are inapposite in connection with a sanctions award for a discovery dispute."). I will consider the relevant factors, in turn.

As discussed, plaintiff seeks a total of $4,921.00 in attorneys' fees. ECF 52-1 at 10; ECF 52-11. The requested fee reflects an aggregate of 22.2 billable hours. Plaintiff submitted an Affidavit of David Rodwin, Esq. (ECF 52-11) in support of the request for attorneys' fees.

**2.**

To determine the reasonableness of an attorney's hourly rate, the Fourth Circuit follows the "locality rule," whereby "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted). "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzales v. Caron*, CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). The

Guidelines set forth advisory fee ranges for attorneys based on years of experience. The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases." Local Rules app. B at § 3 n. *. Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales*, 2011 WL 3886979, at *2.

The hourly rates in the Guidelines are as follows:

a. Lawyers admitted to the bar for less than five (5) years: $150-225.
b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.
c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.
d. Lawyers admitted to the bar for fifteen (15) years or more: $300-475.
e. Paralegals and law clerks: $95-150.

In Mr. Rodwin's Affidavit, he states that he and his co-counsel, Sally Dworak-Fisher, Esq., were responsible for the work performed on the case for plaintiff. ECF 52-11, ¶¶ 2, 3. Mr. Rodwin is an attorney in the Workplace Justice Project of the Public Justice Center ("PJC"), admitted to the California bar in 2012 and the Maryland bar in 2014. *Id.* ¶ 2. His hourly rate is $215. *Id.* ¶ 4. Ms. Dworak-Fisher is the lead attorney of the PJC's Workplace Justice Project. *Id.* ¶ 3. She was admitted to the New York bar in 1998, the bar of the District of Columbia in 2000, and the Maryland bar in 2003. *Id.* ¶ 3. Her hourly rate is $400. *Id.* ¶ 4. Their rates are within the applicable Guideline range.

**3.**

Nothing in Mr. Rodwin's affidavit indicates that he or plaintiff believe the work performed by counsel was novel or difficult. Nor has Mr. Rodwin suggested that the case required any skills or expertise out of the ordinary. *See* ECF 52-11.

**4.**

With regard to the hours expended, *Johnson* counsels that the "trial judge should weigh the hours claimed against [her] own knowledge, experience, and expertise of the time required to complete similar activities." 488 F.2d at 717. The Guidelines provide, Local Rules app. B at § 2(d):

> Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

Here, Mr. Rodwin spent 8.5 hours in connection with the Motion for Leave (ECF 14) and the related reply (ECF 32). *Id.* ¶ 5. He also spent 12.9 hours in connection with the Motion. *Id.* ¶ 6. And, Ms. Dworak-Fisher spent 0.8 hours related to reviewing and editing the Motion and related papers. *Id.* ¶ 7.

Plaintiff's counsel filed the Motion for Leave on June 22, 2017, eight days before the Court even ordered defendants to produce required names and contact information. *See* ECF 21. As a result, the attorneys' fees were not incurred because of defendants' failure to comply with the Court's orders. Therefore, I shall exclude 8.5 hours from the calculation of the fee award.

Ms. Dworak-Fisher's review of Mr. Rodwin's draft constitutes 0.8 hours of duplicate time. The duplicate time does not appear to fit within the Guidelines' allowance of compensation for more than one lawyer for "periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks[.]" Local Rules app. B at § 2(d). However, I shall deduct this duplicate time from Mr. Rodwin's hours, consistent with Local Rules app. B at § 2(d), which states: "[I]f only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer[.]"

Defendant has requested legal fees totaling $4,921.00, reflecting 22.2 billable hours. For the reasons stated, I will reduce the attorneys' fees to reflect an award only for those fees incurred because of defendants' failure to comply with the Court's discovery orders. As a result, I will award $2,921.50 in attorneys' fees to plaintiff.

### III.    Conclusion

For the foregoing reasons, I shall grant in part and deny in part plaintiff's motion for sanctions. Specifically, I shall deny the Motion with respect to a request for a finding of civil contempt, and I shall grant the motion as to an award of attorneys' fees, albeit in an amount less than what was requested.

An Order follows.


Date:   July 31, 2019                                   _____/s/_____

                                                        Ellen Lipton Hollander
                                                        United States District Judge