# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

(Northern Division)

| | | |
|---|---|---|
| WHITNEY DAVIS<br>2552 Frederick Ave<br>Baltimore, MD 21223 | * <br><br> * | |
| OCTAVIA PARKER<br>46 High Seas Ct<br>Essex, MD 21221 | * <br><br> * | Civil Action No. SAG-17-0494 |
| LASHONDA DIXON<br>1301 Elrino St<br>Baltimore, MD 21224 | * <br><br> * | |
| STEPHANIE CRAWFORD<br>1412 Edison Hwy<br>Baltimore, MD 21213 | * <br><br> * | |
| and | * | |
| JAMAR KENNEDY<br>102 Glenard Middleton Ct<br>Dundalk, MD 21222 | * <br><br> * | |
| Plaintiffs, | * | |
| v. | * | |
| UHH WEE, WE CARE INC. d/b/a<br>UHH WEE WE CARE ASSISTED LIVING<br>4726 Elison Ave.<br>Baltimore, MD 21206 | * <br><br> * <br><br> * | |
| **Serve On:**<br>Edwina Murray<br>4726 Elison Ave.<br>Baltimore, MD 21206 | * <br><br> * | |
| UHH WEE, WE CARE<br>TRANSPORTATION INC. d/b/a<br>UHH WEE WE CARE ASSISTED LIVING<br>4726 Elison Ave.<br>Baltimore, MD 21206 | * <br><br> * <br><br> * | |
| **Serve On:** | * | |

| | |
|---|---|
| Edwina Murray<br>4726 Elison Ave.<br>Baltimore, MD 21206 | \* |
| | \* |
| and | |
| | \* |
| EDWINA MURRAY<br>4726 Elison Ave.<br>Baltimore, MD 21206 | \* |
| | \* |
| Defendants. | \* |

# FIRST AMENDED COMPLAINT

Plaintiffs, by and through undersigned counsel, allege as follows:

## Introduction

1. Ms. Whitney Davis, Ms. Octavia Parker, Ms. LaShonda Dixon, Ms. Stephanie Crawford, and Mr. Jamar Kennedy (collectively, "Plaintiffs") are former employees of Edwina Murray and her companies, Uhh Wee, We Care Inc., and Uhh Wee, We Care Transportation Inc. (collectively, "Defendants"). These companies provide care and transportation for individuals with disabilities. Ms. Parker, Ms. Dixon, and Ms. Crawford worked as care providers for individuals with disabilities, Mr. Kennedy worked as a driver for such individuals, and Ms. Davis worked as a dispatcher for Defendants' drivers.

2. Defendants required their employees to work long hours for wages that fell far below the legal minimum, and further ignored and refused to pay overtime premiums to employees when they worked more than 40 hours in a week. Not surprisingly, given the poor working conditions, employee turnover was high.

3. Plaintiffs bring this civil action for relief stemming from Defendants' willful refusal to pay Plaintiffs their wages, including minimum and overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law

2

("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* Plaintiffs seek their unpaid wages, damages, and attorneys' fees and costs pursuant to the FLSA, the MWHL, and the MWPCL. Ms. Davis seeks relief under Maryland common law for her wrongful discharge in violation of public policy.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

6. This Court has personal jurisdiction over Defendants because Defendants conduct business in the District of Maryland.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Parties

8. Plaintiff Whitney Davis is a Maryland resident. She was employed by Defendants as a dispatcher for several weeks in the fall of 2016.

9. Plaintiff Octavia Parker is a Maryland resident. She was employed by Defendants as a care provider from about January 2017 through about February 2017.

10. Plaintiff LaShonda Dixon is a Maryland resident. She was employed by Defendants as a care provider during approximately August 2017.

3

11. Plaintiff Stephanie Crawford is a Maryland resident. She was employed by Defendants as a care provider from approximately January 2019 through approximately March 2019.

12. Plaintiff Jamar Kennedy is a Maryland resident. He was employed by Defendants as a driver from approximately December 2017 through approximately August 2018.

13. As required by the FLSA, 29 U.S.C. § 216(b), Plaintiffs have given their written consent to become a party to this action. True and correct copies of FLSA consent forms for Plaintiffs Dixon, Crawford, and Kennedy are attached hereto as Exhibits.

14. Defendant Uhh Wee, We Care Inc. ("Uhh Wee") is a Maryland corporation with its principal place of business in Baltimore City, Maryland. Uhh Wee operates group homes for individuals with disabilities in and around Baltimore City. At all times relevant to this action, Uhh Wee was an enterprise "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Uhh Wee was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

15. Defendant Uhh Wee, We Care Transportation Inc. ("Uhh Wee Transportation") is a Maryland corporation with its principal place of business in Baltimore City, Maryland. Uhh Wee Transportation provides transportation services for individuals with disabilities in and around Baltimore City. At all times relevant to this action, Uhh Wee Transportation was an enterprise "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Uhh Wee Transportation was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

4

16. Defendant Edwina Murray formed Uhh Wee in 2006 and Uhh Wee Transportation in 2008. Defendant Murray is the sole owner, agent, and/or principal of Uhh Wee and Uhh Wee Transportation. Defendant Murray has control over her companies' daily operations. She hired and fired those entities' employees, set employee wages, determined employee schedules, and supervised employee work performance. Defendant Murray was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g); Md. Code Ann., Lab. & Empl., § 3-101(c); the MWHL, *id.* § 3-401(b); and the MWPCL, *id.* § 3-501(b).

17. Defendant Murray operates Uhh Wee and Uhh Wee Transportation as a single enterprise, such that the two entities perform related activities under unified operations or common control for a common business purpose of providing housing, care, and transportation to their clients, who are individuals with disabilities. Uhh Wee Transportation's office is located at one of Uhh Wee's group homes. Much of Uhh Wee Transportation's business constitutes transporting the individuals who reside at Uhh Wee's group homes, and care providers sometimes serve as drivers for Uhh Wee Transportation.

**Factual Allegations**

18. Plaintiffs repeat and incorporate by reference all of the allegations set forth above.

*Care Providers Ms. Parker, Ms. Dixon, and Ms. Crawford*

19. Each of Uhh Wee's group homes housed approximately four to nine individuals. Residents had a variety of physical health issues that required many to use a wheel chair, as well as mental-health issues including schizophrenia and Alzheimer's. Most residents had both physical and mental health issues.

20. Care providers' responsibilities included assisting residents with toileting, bathing, dressing, cooking, and cleaning, as well as performing care-related paperwork.

5

21. Each group home had only one care provider working at any one time.

22. Defendant Murray maintained three shifts at Uhh Wee's group homes: (i) a 12-hour weekday shift from 6 a.m. to 6 p.m., (ii) a 12-hour weeknight shift from 6 p.m. to 6 a.m., and (iii) a 72-hour "weekend" shift from 6 a.m. Friday morning to 6 a.m. Monday morning.

23. Defendants maintained a "daily duties" sheet in each group home that listed tasks each care provider was required to perform; upon performing a task, the worker was required to initial next to the task description. Defendants also required that workers write "shift reports" that included the behavioral status of the residents, "incident reports," and any materials that needed to be purchased.

24. All work-related equipment and supplies belonged to Defendants.

25. Residents had toileting schedules that required some care providers to check during the night whether they needed to use the toilet or required assistance in cleaning themselves in the event they had soiled themselves. As a result of this and other work like cleaning and paperwork, care providers working at night were able to sleep only for brief periods while seated in a chair at the dining room table or on a common couch, for example. There was no sleeping area designated for their use.

26. In or around January 2017, Defendants Murray and Uhh Wee, as employers and/or joint employers, hired Ms. Parker to work as a care provider at Uhh Wee's group homes.

27. Ms. Parker worked "weekend" shifts from 6 a.m. Friday morning to 6 a.m. Monday morning. Defendant Murray told Ms. Parker that weekend-shift pay was $225.

28. Ms. Parker worked between four and eight such shifts. Defendants paid her just $225 for each 72-hour shift—the equivalent of a pay rate of $3.13 per hour.

6

Case 1:17-cv-00494-SAG Document 96-3 Filed 11/25/19 Page 7 of 14

29. In or around August 2017, Defendants Murray and Uhh Wee, as employers and/or joint employers, hired Ms. Dixon to work as a care provider at Uhh Wee's group homes.

30. Ms. Dixon worked "weekend" shifts from 6 a.m. Friday morning to 6 a.m. Monday morning. Defendant Murray told Ms. Parker that weekend-shift pay for such workers was $300.

31. Ms. Dixon worked four such shifts. Defendants paid Ms. Dixon just $300 for three of those 72-hour weekend shifts—the equivalent of a pay rate of $4.17 per hour. For at least one of those shifts, Defendants paid Ms. Dixon less than that, as she had to leave work around 7 p.m. on Sunday evening because her son was in the emergency room.

32. Ms. Dixon also worked one 12-hour weekday shift, from 6 a.m. to 6 p.m., and was paid $10.10 per hour for that shift.

33. In or around January 2019, Defendants Murray and Uhh Wee, as employers and/or joint employers, hired Ms. Crawford to work as a care provider at Uhh Wee's group homes.

34. Ms. Crawford worked "weekend" shifts from 6 a.m. Friday morning to 6 a.m. Monday morning. Defendant Murray told Ms. Crawford that weekend-shift pay for such workers was $250.

35. Ms. Crawford worked approximately eight such shifts, though the shits extended even longer when Ms. Crawford had to wait until 2 or 3 p.m. on Mondays for a "weekday" worker to arrive. Defendants paid Ms. Crawford just $250 for each 72-hour weekend shift—the equivalent of a pay rate of $3.47 per hour.

36. Ms. Parker, Ms. Dixon, and Ms. Crawford all regularly worked more than 40 hours per week, but received neither minimum wage nor an overtime rate of one and one-half (1.5) times an hourly rate above the legal minimum for hours worked beyond 40 in a given week, despite being entitled to minimum wage and overtime under state and federal law.

*Driver Jamar Kennedy*

37. In or around December 2017, Defendants Murray and Uhh Wee Transportation, as employers and/or joint employers, hired Mr. Kennedy to work as a driver.

38. Defendant Murray told him that he would be paid $10 per hour.

39. Mr. Kennedy generally worked Monday to Friday, from approximately 6 a.m. to approximately 10 a.m., and again from approximately 1 p.m. to approximately 4:30 p.m., though shifts sometimes extended as late as 5:30 p.m.

40. Many of the passengers Mr. Kennedy transported were residents at Uhh Wee's group homes who needed transportation to adult medical day care facilities and similar facilities.

41. Uhh Wee Transportation provided Mr. Kennedy with a list of names and addresses of people he was required to transport, and required him to write the time of the actual pickup or drop-off on that paper.

42. After he started work for Defendants, Mr. Kennedy learned that Defendants were deducting $200 per paycheck as a "rental" fee for use of the transport van. However, Defendants required him to park the van outside of one of their group homes when he was not transporting their customers and did not permit him to use the van for anything other than transporting Defendants' passengers.

43. For two weeks' work, approximately 40 hours per week, Defendants paid Mr. Kennedy between $400 and $500— the equivalent of a pay rate of between $5 and $6 per hour.

44. Mr. Kennedy left his employment with Defendants in approximately August 2018.

*Dispatcher Whitney Davis*

45. In or around September 2016, Ms. Davis spoke with Defendant Murray about an employment opportunity as a dispatcher.

8

46. Shortly thereafter, Defendants Murray, Uhh Wee, and Uhh Wee Transportation, as employers and/or joint employers, hired Ms. Davis to work as a dispatcher for Uhh Wee Transportation's drivers.

47. Defendant Murray told Ms. Davis that her pay rate was $10.10 per hour, set her work schedule, and maintained records of her time worked.

48. Ms. Davis worked for Defendants for several weeks. In at least one of those weeks, she worked more than 40 hours.

49. Defendant Murray told Ms. Davis that to continue working as a dispatcher, she needed to obtain a "DOT Card," the Medical Examiner Certificate that federal law requires individuals obtain prior to receiving a commercial driver's license. However, neither state nor federal law required such a certificate for Ms. Green's position as a dispatcher.

50. Ms. Davis attempted to obtain this Medical Examiner Certificate, but her examining doctor did not certify her because of medication she took for a mental-health disability, severe depression.

51. Defendant Murray terminated Ms. Davis's employment in or around November 2016 because Ms. Davis did not obtain this unnecessary certification.

52. Other than one $200 payment that Defendants characterized as a "promissory note," Defendants paid Ms. Davis nothing at all for her work.

53. Defendants did not pay Ms. Davis the required minimum hourly wage for her work, nor did Defendants pay Ms. Davis the required overtime rate of one and one-half (1.5) times her regular hourly rate for hours worked beyond 40 in a given week, despite the fact that she was entitled to both minimum wage and overtime under state and federal law.

9

54. Pursuant to the FLSA, 29 C.F.R. § 516, and Md. Code Ann., Lab. & Empl. § 3-424, Defendants had an obligation to maintain employment records for Plaintiffs and all those similarly situated. The exact number of hours worked by Plaintiffs and others similarly situated will be known only through discovery of these records.

55. At all times relevant to this action, Defendants unlawfully failed or refused to comply with the posting requirements of MWHL, Md. Code Ann., Lab. & Empl. § 3-423, and the FLSA, 29 C.F.R. § 516.4.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**(Individual Minimum Wage Actions by all Plaintiffs and Individual Overtime Actions by all Plaintiffs except Plaintiff Kennedy)**

56. Plaintiffs repeat and incorporate by reference the allegations set forth above.

57. Defendants failed to pay Plaintiffs minimum wages and failed to pay all Plaintiffs overtime wages, in violation of 29 U.S.C. §§ 206 and 207.

58. Defendants' violations were willful, as such term is used in 29 U.S.C. § 255(a). Defendants knew their violations were unlawful or showed reckless disregard for whether their conduct was prohibited.

59. Defendants' violations were not the result of a good-faith, reasonable error.

60. Defendants' violations caused Plaintiffs to suffer loss of wages and interest thereon.

61. Defendants are liable to Plaintiffs under 29 U.S.C. § 216(b) for their unpaid wages including any minimum and overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT II
## MARYLAND WAGE AND HOUR LAW
**(Individual Minimum Wage Actions by all Plaintiffs and Individual Overtime Actions by all Plaintiffs except Plaintiff Kennedy)**

62. Plaintiffs repeat and incorporate by reference the allegations set forth above.

63. Defendants failed or refused to pay all Plaintiffs minimum wages, and failed to pay all Plaintiffs except Plaintiff Kennedy overtime wages, in violation of Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a) and 3-420.

64. Defendants did not act in good faith and with a reasonable belief that the wages paid to Plaintiffs were not less than the wages required under the MWHL.

65. Defendants are liable to Plaintiffs pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid minimum and overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT III
## MARYLAND WAGE PAYMENT AND COLLECTION LAW
**(Individual Actions by all Plaintiffs)**

66. Plaintiffs repeat and incorporate by reference the allegations set forth above.

67. Defendants failed or refused to pay Plaintiffs all wages due, including minimum and overtime wages, on their regular paydays in violation of Md. Code Ann., Lab. & Empl. § 3-502.

68. Defendants failed or refused to timely pay Plaintiffs all wages due for work that they performed, in violation of Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a).

69. Defendants failed and/or refused to pay Plaintiffs all wages due for work performed prior to the termination of Plaintiffs' employment, or on or before the day the Plaintiffs would have been paid had they not been terminated, as required by Md. Code Ann., Lab. & Empl. § 3-505(a).

11

70. Defendants' unlawful failure or refusal to timely pay Plaintiffs all their earned wages was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of Plaintiffs' claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute.

71. Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, Plaintiffs seek unpaid wages, an additional award of double damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

### Count IV
### WRONGFUL DISCHARGE
### (Individual Action by Ms. Davis)

72. Ms. Davis repeats and incorporates by reference the allegations set forth above.

73. Defendants employed Ms. Davis on an at-will basis, without a written employment contract or a specific term of employment.

74. Ms. Davis has a major depressive disorder that substantially limits one or more major life activities, and therefore constitutes a disability under state and federal anti-discrimination law.

75. Ms. Davis at all times fully and competently performed all the duties assigned to her. Her mental-health disability was unrelated to the reasonable performance of her job and did not interfere with the reasonable performance of her job.

76. Defendant Murray, on behalf of herself, Uhh Wee, and Uhh Wee Transportation, terminated Ms. Davis because Ms. Davis was denied a Medical Examiner Certificate based on medication she took for her mental-health disability, despite the fact that such certification was neither legally required for her position nor a bona fide occupational qualification.

12

77. The avowed public policy of the State of Maryland is to assure all persons equal opportunity in receiving employment, regardless of disability unrelated in nature and extent so as to reasonably preclude the performance of the employment, and to prohibit discrimination in employment. Md. Code Ann., State Gov't § 20-602.

78. Ms. Davis may not assert a claim directly under state or federal anti-discrimination statutes because Defendants did not have the requisite minimum number of employees under those statutes.

79. Ms. Davis's termination constitutes disability discrimination and was contrary to Maryland public policy.

80. Defendant Murray's conduct in terminating Ms. Davis was deliberate, malicious, willful, and intentionally calculated to inflict harm upon her.

81. As a result of Defendants' wrongful termination of Ms. Davis, she has been left without employment, has been deprived of her hourly wages, has suffered damage to her reputation, and has been otherwise damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's respective unpaid minimum and/or overtime wages, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

b) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's unpaid minimum and/or overtime wages, plus liquidated damages, pursuant to the MWHL, Md. Code Ann., Lab. & Empl. §§ 3-427(a) and (d);

13

c)   Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's unpaid wages, including overtime wages, plus double damages pursuant to the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507.2;

d)   Grant judgment against Defendants, jointly and severally, on Ms. Davis's wrongful-discharge claim and award compensatory and punitive damages;

e)   Grant a reasonable incentive award to Ms. Davis to compensate her for the time and effort she has spent and will spend protecting the interests of other current and former employees of the Defendants, including the Plaintiffs named in this First Amended Complaint, and for the risks she took in doing so;

f)   Award Plaintiffs pre- and post-judgment interest on all amounts owed as allowed by law;

g)   Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216(b), Md. Code Ann., Lab. & Empl. § 3-507.2, and Md. Code. Ann., Lab. & Empl. § 3-427(d); and

h)   Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted on this 25th day of November, 2019 by:

> /s/ David Rodwin
> David Rodwin (Fed. Bar No. 18615)
> Sally Dworak-Fisher (Fed. Bar No. 27321)
> THE PUBLIC JUSTICE CENTER
> One North Charles Street, Suite 200
> Baltimore, MD 21201
> Tel: (410) 625-9409
> Fax: (410) 625-9423
> rodwind@publicjustice.org
> dworak-fishers@publicjustice.org
>
> *Attorneys for Plaintiffs*

14