**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WHITNEY DAVIS, *

Plaintiff, *

v. * Civil Case No. SAG-17-494

UHH WEE, WE CARE, INC. *et al.*, *

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Following more than two years of litigation, on December 10, 2019, Plaintiffs Whitney Davis, Octavia Parker, LaShonda Dixon, Stephanie Crawford, and Jamar Kennedy[1] (collectively "Plaintiffs") filed an Amended Complaint against Defendants Edwina Murray ("Murray"), Uhh Wee, We Care Inc. ("Uhh Wee"), and Uhh Wee, We Care Transportation Inc. ("Uhh Wee Transportation") (collectively "Defendants"), alleging, among other claims, a willful failure to pay minimum wages and legally required overtime pay. ECF 98. Currently pending is Murray's Motion for Leave to File Response to Amended Complaint, ECF 127, and her Response in Opposition to Clerk's Entry of Default, ECF 128, which this Court will construe collectively as a motion to lift the default that the Clerk entered against Murray on July 27, 2020 ("the Motion").[2] ECF 124. Plaintiffs filed an opposition to Murray's filings, ECF 128, but Murray did not timely

[1] Kennedy has since voluntarily dismissed his claims. ECF 105, 106.

[2] The Clerk's Entry of Default against the named corporate defendants remains valid, because Murray, as a *pro se* litigant, cannot represent the corporations. *See* Loc. R. 101.1(a) (D. Md. 2018); *Roland v. Cal. Men's Colony*, 506 U.S. 194, 201 (1993) ("[It] has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.").

file a reply. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Murray's motion will be denied, the default will remain in place, and Plaintiffs will be permitted to proceed with filing a motion for default judgment.

## I. BACKGROUND

The procedural history of this case is lengthy and complex, but its details are critical to the resolution of the instant Motion. The original Complaint in this case was filed on February 17, 2017. ECF 1. Following service, Defendants did not respond to the Complaint, and the then-Plaintiffs filed a motion for Clerk's entry of default. ECF 4. However, Plaintiffs subsequently agreed, with then-counsel for the Defendants, to vacate the entry of default and proceed with the litigation. ECF 6, 7. Defendants filed an answer, ECF 9, and a scheduling order was set. As discovery commenced, Defendants' counsel sought, and was granted leave, to withdraw from the case. ECF 17, 18. Then-presiding United States District Judge Ellen L. Hollander entered an order that the scheduling order would remain unchanged, although Murray would be proceeding without counsel unless new counsel entered an appearance on her behalf. ECF 20. On August 2, 2017, Defendants' second counsel, Kenneth Gauvey, entered his appearance. ECF 26.

Almost a year later, as a result of a docketing snafu, on August 28, 2018, Judge Hollander issued a memorandum opinion and order addressing Plaintiffs' contention that Defendants had failed to identify their current and former weekend care providers in discovery. ECF 49. In the course of describing the ongoing dispute between the parties, Judge Hollander stated, "the specter of document tampering . . . shrouds [one of the plaintiffs'] departure from the case and suggests an effort to thwart the claim of weekend care providers." *Id.* at 11. She confirmed that, in her view, the time sheets submitted by Murray in discovery "appear to be altered." *Id.* Concluding that "Murray's questionable conduct cannot be used as a vehicle to thwart discovery," Judge

Hollander ordered Murray to identify the current and former weekend care providers by September 28, 2018. ECF 50.

On October 10, 2018, Plaintiffs filed a motion for sanctions and attorneys' fees, as a result of Defendants' failure to comply with Judge Hollander's order. ECF 52. Less than two weeks later, attorney Gauvey sought, and was granted, leave to withdraw his appearance. ECF 53, 56. Judge Hollander denied Murray's subsequent request for a postponement. ECF 59. On January 15, 2019, Judge Hollander issued an amended scheduling order. ECF 60. Plaintiffs sought a Clerk's entry of default as to the two corporate entities, ECF 61, which the Clerk entered on February 1, 2019. ECF 64. On April 12, 2019, Judge Hollander issued an order, in which she afforded Murray an additional several weeks to "comply with the Order of August 28, 2018" relating to the identification of the weekend employees. ECF 70. She also extended the discovery deadline "to 90 days following Ms. Murray's compliance with the Court's Order of August 28, 2018." *Id.*

Despite being afforded the extra time, after more than seven months had already elapsed since the original Court order, Murray failed to supply the identifying information for her weekend employees. Accordingly, Judge Hollander issued a show cause order in May, 2019, and appointed pro bono counsel for the limited purpose of representing Murray at a civil contempt hearing. ECF 72, 73. At the show cause hearing on June 28, 2019, Murray agreed to produce the relevant records. ECF 77, 78. On July 31, 2019, Judge Hollander issued a Memorandum Opinion and Order granting in part Plaintiffs' Motion for Sanctions and Attorneys' Fees, and entering judgment against Defendants for Attorneys' Fees in the amount of $2,921.50, after finding that "defendants failed to comply with clear prior orders of this Court." ECF 79 at 17.

In the meantime, because disputes had arisen regarding subpoenas, Judge Hollander referred the case to United States Magistrate Judge Beth P. Gesner to supervise discovery and related scheduling. ECF 89. Shortly thereafter, the case was reassigned to my docket, from Judge Hollander's. On November 25, 2019, Plaintiffs filed a motion for leave to file an amended complaint, and to amend the scheduling order. ECF 96. Because no opposition was timely filed, I granted the motion on December 10, 2019, and set a discovery deadline of February 24, 2020, and a dispositive motions deadline of April 10, 2020, with a notation that "no further extensions will be granted." ECF 97. In accordance with that order, the Amended Complaint was docketed on December 10, 2019. ECF 98.

The parties continued engaging in discovery, including several disputes before Judge Gesner, in the ensuing weeks. According to a Motion to Compel filed by Plaintiffs, ECF 99, Murray appeared *pro se* for her deposition on January 16, 2020, although she was accompanied by a "paralegal" from an attorney who did not represent Murray. ECF 99 at 1–2. After reviewing the transcripts of that deposition, Judge Gesner entered an order prohibiting the paralegal (or anyone other than an attorney of record for Murray) from attending Murray's continued deposition, and requiring Murray to answer certain deposition questions within the scope of discovery. ECF 100. Judge Gesner also authorized Plaintiffs to file a request for attorneys' fees and costs arising out of the Motion to Compel. *Id.*

Despite her continued participation in discovery as a *pro se* litigant, Murray did not answer the Amended Complaint. The corporate Defendants, who remained unrepresented, similarly did not answer. Accordingly, on February 27, 2020, Plaintiffs again sought a Clerk's entry of default, or, in the alternative, default judgment as to liability. ECF 108. After that filing, Murray filed a response to the pending motion before Judge Gesner, seeking attorneys' fees, but did not respond

to the Complaint or the motion seeking default. ECF 110. On April 29, 2020, this Court denied Plaintiffs' motion for entry of default judgment without prejudice, but directed that Murray file an answer to the Amended Complaint by June 1, 2020. ECF 113. The Order specifically provided that if no answer was filed by that date, "Plaintiff should renew her motion for entry of default judgment." *Id.* The Order also reopened discovery for the limited purpose of allowing a re-deposition of Murray, and noted that, "Based on Murray's circumspection and general dilatory tactics, Plaintiff is unable to fully develop her litigation strategy." *Id.* at 2.

Once again, the Court's Order provoked no response from Murray. She did not file an answer by June 1, 2020. Therefore, on June 2, 2020, Plaintiffs filed their third Motion for Clerk's Entry of Default. ECF 116. On May 27, 2020, Judge Gesner entered a memorandum opinion and Order, awarding Plaintiffs fees and costs from Murray in the amount of $2,077.88, arising out of the earlier Motion to Compel. ECF 114, 115. On June 15, 2020, before the Clerk entered default, Murray filed her own Motion to Compel, and a Motion for Reconsideration of Judge Gesner's order awarding fees and costs, but she *still* did not file an answer or an opposition to the Clerk's entry of default. *See, e.g.*, ECF 117, 118. Judge Gesner denied both of Murray's motions, and Murray filed a motion for reconsideration of one of those rulings, *still* without answering the Amended Complaint. *See* ECF 121–123. On July 27, 2020, nearly two months after the deadline the Court had set for Murray to file her answer, the Clerk entered default. ECF 124. More than two weeks later, on August 14, 2020, Murray filed her instant motion to lift the default, including as an exhibit her proposed Answer to the Amended Complaint. ECF 127, 128.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." As the Fourth

Circuit has noted, "an extensive line of decisions has held that [Rule 55(c)] must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). The Fourth Circuit has also stated that, when compared to the standard under Rule 60(b), the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense.").

Six factors are relevant to the analysis of this Motion and whether "good cause" exists. The Court considers "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006).

## III. ANALYSIS

Given the procedural history described above, the six *Payne* factors weigh squarely against lifting the default in this case, in spite of the forgiving "good cause" standard and the general lenience provided *pro se* litigants. *See L & M Companies, Inc. v. Biggers III Produce, Inc.*, 2009 WL 4823364, at *4 (W.D.N.C. Dec. 9, 2009), *aff'd*, 2010 WL 1439411 (W.D.N.C. Apr. 9, 2010) (denying *pro se* litigant's motions to set side an entry of default and file an answer because the *Payne* factors strongly counseled against it).

The first factor is whether Murray has a meritorious defense. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). "The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass*, 843 F.2d at 812.

Murray, a *pro se* litigant, did not present any evidence in an admissible format, such as affidavits or declarations, to prove the merits of her defense. Because Murray is *pro se*, her filings must be "liberally construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). However, she has not even alleged that her defense is meritorious, and certainly has not proffered facts that might constitute a meritorious defense. Instead, she simply states, "There are relevant matters of dispute such as the hourly minimum wage requirements during the different years Plaintiffs alleged lack of full pay; and whether the Plaintiffs operated under the Defendants directly or under a management company, and even whether the Plaintiffs were qualified employees or students, trainees, or work activity participants." ECF 128 at 3. Even construed liberally, those "matters of dispute" do not amount to meritorious defenses on the merits of the case. As Plaintiffs point out, the minimum wage is set by statute, such that there can be no dispute as to what the minimum wage requirements were during the relevant period. The second "matter of dispute"—whether Plaintiffs operated under a management company or under Defendant directly—is not linked to *any* contentions in Murray's

proposed answer, which fails to mention a management company at all. Lastly, Murray's assertion that Plaintiffs may have been "students, trainees, or work activity participants" is unsupported by admissible evidence and, even if true, does not actually undermine Plaintiffs' entitlement to minimum compensation. *See Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 660 (4th Cir. 2016) (noting that, for purposes of FLSA and Maryland labor compensation laws, "work broadly encompasses physical or mental exertion . . . controlled or required by the employer primarily for its benefit" and that "training can constitute work") (internal quotations omitted).

The second factor, "reasonable promptness," weighs heavily against Murray. It is true that her instant motion to vacate was filed roughly eighteen days after the Clerk's entry of default, which is not exceedingly longer than times found to have been "reasonably prompt" in other Fourth Circuit cases. *See Colleton Preparatory Acad., Inc.*, 616 F.3d at 418 (nine days); *Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dept. of Labor*, 895 F.2d 949, 950 (4th Cir. 1990) (eight days). However, that analysis ignores the fact that Murray had been on notice, since Plaintiffs first sought default on February 27, 2020, that her answer to the Amended Complaint was delinquent. ECF 108. She took no action for more than five months after that date, even after the Court generously extended her until June 1, 2020 to file the answer. Accordingly, her action cannot, under any lens, be viewed as "reasonably prompt."

The third factor, the personal responsibility of the defaulting party for the failure to file a responsive pleading, again weighs heavily in favor of Plaintiffs. Murray cannot credibly claim ignorance of the requirement that an answer needed to be filed, given that she was reminded by Plaintiffs in their two filings for entry of default, by the Court in its order granting a deadline of June 1, 2020 for the answer, and in subsequent filings relating to her Motion to Compel, all of which were filed before the Clerk actually entered default against her. *See* ECF 108, 113, 116,

120, 122. Her suggestion that she "believed that her prior attorney had filed the Response prior to his termination" defies logic. ECF 127 at 1. Murray was self-represented at all times since the filing of the Amended Complaint.[3] Indeed, she filed multiple motions during the time her response to the Complaint was due, ECF 117, 118, foreclosing any argument that her *pro se* status prevented her from engaging effectively in the litigation process.

The fourth factor, prejudice, again weighs in Plaintiffs' favor. Minor delay does not constitute prejudice, and neither does the fact that Plaintiffs would actually have to present their case on the merits. *See Augusta Fiberglass*, 843 F.2d at 812 ("As to prejudice, we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory."). Here, however, Murray has delayed the filing of her answer well beyond the discovery deadline. Her answer was due on December 24, 2019, before any of Murray's depositions. To permit Murray to file her proposed answer now would be to permit her to introduce defenses after discovery has concluded, which prejudices Plaintiffs' ability to present their case.

The fifth factor is history of dilatory action. Murray's dilatory action in this case is nothing short of remarkable. Although approximately one year (of the more than three year) history of this case can be attributed to a docketing snafu, the remainder of the delay is almost entirely attributable to Murray's dilatory conduct. She repeatedly disregarded Court orders, and declined to produce required discovery. Her failure to file the Answer as required is not an aberration, but a continuation of her behavior in this case since early 2017.

[3] Presumably, Murray's representation refers to attorney Steven T. Mitchell, who accompanied her to one of her depositions, where he stated, during a call to Judge Gesner, that he was not a member of the bar of this Court, but would "immediately apply." ECF 108-4 at 21–30. Mitchell in fact never entered an appearance in this case, and, accordingly, never filed a response to the Amended Complaint. Any suggestion that Murray may have believed to the contrary is belied, as described above, by the sheer number of court filings making reference to the fact that no answer had been filed.

The final factor is consideration of sanctions less onerous than default. At this stage of the litigation, it is clear that sanctions less onerous than default are entirely ineffective. Murray has not changed her behavior, despite being subject to a contempt hearing and to imposition of two significant monetary judgments for fees and costs associated with her misconduct and her failure to comply with Court orders. The Court expressly warned Murray, in its order of April 29, 2020, that failure to file an answer by June 1, 2020 might result in default. *See* ECF 113. Even in light of that warning, Murray, once again, *entirely disregarded* the deadline. Litigation simply cannot proceed in this manner.

As a result of the foregoing analysis, Defendant's Motions to Lift Default and, consequently, to File an Answer fall short. The Court does not reach this conclusion lightly and emphasizes that, in many cases, a defendant—particularly a *pro se* one like Murray—would be permitted to remove the entry of default. However, application of the six *Payne* factors suggests that this case does not present a close call. Murray has repeatedly demonstrated an unwillingness to cooperate with the judicial process, and cannot now rely on the Court's leniency when she is in this position as a result of her extensive dilatory and obstructive tactics. The Court will not lift the default that the Clerk entered on July 27, 2020, and will consider Plaintiffs' motion for default judgment in due course.

## IV. CONCLUSION

For the reasons set forth above, Murray's Motion for Leave to File Response to Amended Complaint, ECF 127, will be denied, and the Clerk's entry of default will remain in effect against all of the named defendants. Plaintiffs will be afforded up to thirty days in which to file a motion for default judgment, and issues relating to the entry of judgment and appropriate amount of damages, if any, will be litigated in that context. A separate order follows.

Dated: September 18, 2020

/s/
Stephanie A. Gallagher
United States District Judge